STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. BROWN COUNTY BANK, APPELLEE: STOCK YARDS NATIONAL BANK, APPELLANT.

FILED NOVEMBER 20, 1924. No. 22907.

1. **Banks and Banking:** NOTICE. The employment by a bank of clerks to perform purely ministerial duties does not constitute them such agents of the bank that notice of transactions passing through the bank in the ordinary routine of the bookkeeping of the institution is notice of the transactions to the bank, in the absence of any showing that these clerks imparted the knowledge they acquired to any officer of the bank, or that it was their duty so to do.

2. ———: GUARANTY FUND. When a bank receives the proceeds of a sale of chattels on which a third party held a valid first mortgage, with knowledge that the sale was made without the consent of the mortgagee, and that the ownership of the deposit is in the mortgagee, it is liable to the mortgagee for the sum deposited, and if the bank becomes insolvent before paying the same, the mortgagee may enforce payment from the guaranty fund.

APPEAL from the district court for Brown county: ROB-
ERT R. DICKSON, JUDGE. *Reversed, with directions.*

*Morsman, Maxwell & Haggart,* for appellant.

*O. S. Spillman, Attorney General, Harry Silverman, W.
M. Ely* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, GOOD and
THOMPSON, JJ.

MORRISSEY, C. J.

Appellant, the Stock Yards National Bank, of South
Omaha, filed its claim with the receiver of the Brown Coun-
ty Bank, of Long Pine, praying payment from the guar-
anty fund of a certificate of deposit issued December 23,
1920, by the Brown County Bank in the sum of $7,400 pay-
able June 1, 1921, with interest at 5 per cent. per annum,
payable to E. M. Sandy and by him indorsed and delivered
to appellant. There was another item presented in the
claim filed, but it is not involved in this appeal and need
not be further noted.

The issues were presented to the district court for Brown
county. The court allowed the certificate as a general claim
against the bank of issue, but denied appellant the right
to recover from the guaranty fund. From the order deny-
ing recovery from the guaranty fund, claimant has appeal-
ed.

There is little dispute as to the facts. In 1919, and for
a long time prior thereto, the Brown County Bank conduct-
ed a banking business at Long Pine, Nebraska, and the
Stock Yards National Bank conducted a banking business
at South Omaha, Nebraska, and was the correspondent bank
in that city for the Brown County Bank. In June, 1919,
the Brown County Bank requested the Stock Yards Na-
tional Bank to discount for it a promissory note for $33,000
which had been executed by E. M. Sandy and which was
payable to the president and cashier of the Brown Coun-
ty Bank. The officers of the Brown County Bank repre-
sented to the claimant that this note was secured by a chat-

tel mortgage on all the cattle then owned by Mr. Sandy and that the security was sufficient to cover the amount of the note. After some correspondence, the claimant discounted this note and placed the proceeds to the credit of the Brown County Bank. In the fall of 1919, without the consent or knowledge of claimant, Sandy shipped a considerable number of the cattle covered by the chattel mortgage to South Omaha where they were sold through South Omaha commission firms. These sales amounted to $7,409.86. The money thus realized from the cattle was deposited, according to a custom prevailing at South Omaha, by the commission firms in the Stock Yards National Bank, that bank being the local correspondent of the Brown County Bank. Briefly, the method followed by the commission companies of making settlements and deposits is as follows: The commission firms keep on file cards furnished by the Omaha banks showing the Omaha bank with which each country bank in the territory does business. When a commission firm has money to remit, as in the case of the shipment heretofore mentioned, it makes out slips in triplicate and takes these slips together with its own check to the proper Omaha bank; the collection clerk in the bank puts the bank stamp on each of the slips; he then gives the duplicate to the commission firm and gives the triplicate and the original to the bank bookkeeper; the bookkeeper forwards the original to the country bank and preserves the triplicate for his own bank records from which to make up his statement of the transaction with the country bank. This method was followed in handling the money realized from the sale of the Sandy cattle and the money was thus deposited in the Stock Yards National Bank. The credits went through the claimant bank in the ordinary routine of business; the original slips were sent to the Brown County Bank and that bank was advised that the credit should be made to the Sandy account, which was done, and Sandy was subsequently permitted to check out the amount. Subsequent to these transactions, the $33,000 note executed by Sandy fell due. A partial payment had been made there-

VOL. 112]     SEPTEMBER TERM, 1924.          645

State, ex rel. Davis, v. Brown County Bank.

on, but the fund did not come from the sale of any of the chattel security. The managing officers of the claimant, being without knowledge of the cattle shipment made by Sandy, took a renewal note to cover the amount remaining unpaid, to wit, $29,000. This note was subsequently renewed and a new chattel mortgage executed covering all the cattle owned by Sandy and purporting to include all the cattle covered by the original mortgage, notwithstanding the fact that many of these cattle had been sold at the South Omaha stock yards in the fall of 1919. The record clearly shows that the officers of the Brown County Bank, who had indorsed the original note and negotiated it to claimant, had full knowledge of this fact when the renewal mortgage was made. And when the Brown County Bank received the advices to credit the account of Sandy with the amount realized from the sales of the cattle, its officers knew, or ought to have known, the source of the fund and they knew that claimant did not have such knowledge. Instead of advising claimant of the facts, they assisted in concealing the transactions and in inducing claimant to take renewal notes and mortgages purporting to cover cattle which had been sold and the proceeds of the sale deposited in their bank. As soon as claimant discovered the facts as to the sale of the cattle and the deposit of the fund in the Brown County Bank, it demanded payment of that bank.

The president of the Brown County Bank does not directly admit that he acknowleged the liability of his bank for the fund, but that is the purport of his testimony. The representative of claimant who made the demand testified unequivocally that the liability of the Brown County Bank was admitted by its officers, but that they stated to him that the bank did not then have cash in hand to repay the sum demanded, and that, because of this fact, an agreement was reached under which the bank issued to Sandy the certificate here in suit and Sandy indorsed the certificate to claimant, and it was accepted by claimant in settlement of the deposit of its money realized from the sale of the mortgaged cattle.

It is urged by the attorneys for the receiver that claimant had possession of the fund and sent the same to the Brown County Bank with advice to place the same to the credit of Sandy, and that the Brown County Bank simply acted in accordance with this advice, and, therefore, claimant is chargeable equally with the Brown County Bank with knowledge of the source of the fund. The argument is appealing, but transactions must be judged in the light of all the facts disclosed. The officers of the Brown County Bank had full knowledge of the source of the fund, and their connection with the transaction from the beginning of the negotiations for the discount of Mr. Sandy's original note down to and including the renewals was such that they must be conclusively held to have known that the cattle were sold without the knowledge or consent of the mortgagee; that the security was inadequate to pay the note; that Mr. Sandy's resources were then about exhausted, and that they, the indorsers of the note, as well as the Brown County Bank, were on the verge of financial failure. As experienced bankers they knew that credit slips pass through a large institution, such as claimant, as part of the routine, handled by clerks who have no part in the management of the bank, and that in the regular course of business the entries would not be noted by the officers having control and management of the institution. The entries made by the clerks of claimant, who were merely charged with the ministerial duty of making entries, did not charge the bank with knowledge of the transactions, in the absence of any showing that these clerks imparted the knowledge they acquired to any officer of the bank, or that it was their duty so to do. 2 Pomeroy, Equity Jurisprudence (4th ed.) sec. 668; *Ætna Indemnity Co. v. Schroeder,* 12 N. Dak. 110; *Anketel v. Converse,* 17 Ohio St. 11.

When the Brown County Bank received the proceeds of the sale of the mortgaged property with knowledge that it was created by an unauthorized sale of Sandy's cattle, it could not rightfully pay out the fund except on order of its true owner. *Alter v. Bank of Stockham,* 53 Neb. 223.

As said by this court in the body of the opinion in *Bank of Stockham v. Alter*, 61 Neb. 359:

" Under well-known equitable principles, the defendant bank, having received the proceeds of the sale of the mortgaged property with notice of plaintiffs mortgage lien and prior claim thereon, could be held and charged as a trustee of such funds for the use and benefit of the plaintiffs."

Under the facts disclosed, the ownership of the fund in the Stock Yards National Bank is beyond dispute. The same may be said as to its deposit in the Brown County Bank. The owner of the fund had the right to demand its payment. It did so; but, failing to receive the same in money, it accepted the certificate of deposit which is, in fact, only an acknowledgment of the deposit. The status of neither party was changed by the issuance of the certificate, and, under the repeated holdings of this court, appellant is entitled to the allowance of his claim and to have the same paid from the guaranty fund. *State v. American State Bank, ante,* p. 182; *State v. American State Bank, ante,* p. 272; *State v. Farmers State Bank, ante,* p. 380; *Vavra v. Claridge, ante,* p. 553.

The judgment of the district court is reversed and the cause remanded, with directions to enter a judgment in accordance with this opinion.

REVERSED.

Note—See Banks and Banking, 7 C. J. secs. 15 (1926 Ann.) 134; Chattel Mortgages, 11 C. J. sec. 347.