GENERAL AMERICAN LIFE INSURANCE COMPANY, APPELLEE,
v. OMAHA NATIONAL BANK, APPELLANT.

279 N. W. 310

FILED APRIL 29, 1938.   No. 30309.

*Wells, Martin, Lane & Offutt*, for appellant.

*Brown, Fitch & West, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

Plaintiff's petition alleged insolvency of the Missouri State Life Insurance Company, the purchase of the assets of said company from the superintendent of the insurance department of the state of Missouri; that among the assets of said company was a bank deposit in defendant bank in the sum of $1,364, for which it prayed judgment. The answer was a general denial, pleaded the ownership of certain policies of insurance in possession of the defendant bank, and claimed a lien and a right of set-off on the deposit held in the bank for the cash surrender value of the two policies owned by said bank. The reply set forth the necessary requirements contained in the policies in order to obtain the cash surrender value of the same, and alleged that the plaintiff's action was for money had and received. The supplemental reply had reference to the taking over of the assets of the company by the superintendent of the insurance department of the state of Missouri, and alleged conditions of the purchase agreement by plaintiff company. Other elements as pleaded are contained in the opinion as reflected by the evidence. The cause was tried to the district court for Douglas county, without the intervention of a jury. The court found for the plaintiff, and defend-

ant has appealed. The facts necessary for a determination of this case and as found in the stipulation of facts are hereinafter set forth.

On July 23, 1919, the Commonwealth Life Insurance Company issued its policy No. 24353 (S-184173) to George L. Harding in the face amount of $2,000. On October 21, 1920, the same company issued its policy No. 31096 (S-186616) to William H. Harding in the face amount of $4,000. The Missouri State Life Insurance Company, by agreement, prior to August 28, 1933, took over the business of the Commonwealth Life Insurance Company, including the two policies. On April 24, 1928, the policy of insurance issued to George L. Harding was assigned by insured and John H. Harding, the beneficiary, to the Omaha National Bank. Likewise, on April 19, 1928, the policy of insurance issued to William H. Harding was assigned by the insured and Florence Harding, the beneficiary, to the Omaha National Bank. Both assignments were executed on printed forms, subject to the conditions of the policies and the rules and regulations of the company. The policies were held as collateral security by the bank for a loan, and when the assignments were issued on the policies to the bank a certain part of the original loan was paid, and the bank then became the owner of the policies.

The policy issued to George L. Harding provides: "Surrender for cash:—After three full years' premiums shall have been paid hereon, if any premium shall not be paid when due, and if there be no indebtedness hereon, upon written request of the insured within six (6) months from the said due date, and the legal surrender of this policy, the company will pay in cash therefor the amount specified in column (1) of the accompanying Table A for the year to the end of which premiums have been paid in full." The policy issued to William H. Harding provides: "After three full years' premiums shall have been paid, the owner at any time within three months after any default, but not later, may surrender this policy: (a) For its cash surrender value less any indebtedness to the company hereon."

On or about August 28, 1933, the Missouri State Life Insurance Company was adjudged insolvent, and the assets of said company were taken over by the superintendent of the insurance department of the state of Missouri as liquidating officer. At that time the Omaha National Bank had on deposit an account in favor of the Missouri State Life Insurance Company of $3,454.99 and a special account for the same company in the amount of $74.63. The defendant corporation received a telegram on August 28, 1933, from the superintendent of the insurance department of the state of Missouri, informing the bank that he had been vested with title to all of the assets of the Missouri State Life Insurance Company by order of the circuit court of the city of St. Louis. On August 29, 1933, the cashier of the defendant bank in a letter written to the superintendent of insurance acknowledged receipt of the telegram, advised him that the bank was the owner of two policies, one issued to George L. Harding, the other to William H. Harding, and informed him as to the cash surrender value of each policy, demanded payment of the cash surrender value of the policies, and claimed the right to offset the cash surrender value thereof against the liability to the company on the deposit account.

As shown by the stipulation of facts in the record, the bank paid to plaintiff the quarterly premiums on the George L. Harding policy after August 28, 1933, as follows:

| Quarterly Premium Due | Paid |
|---|---|
| 10-23-33 | 11-23-33 |
| 1-23-34 | 2-19-34 |
| 4-23-34 | 5-18-34 |
| 7-23-34 | 7-16-34 |
| 10-23-34 | 7-16-34 |
| 1-23-35 | 7-16-34 & 3-1-35 |

All of said premiums were in the amount of $17.18 each. The bank also paid to the plaintiff on the William H. Harding policy one annual premium of $110.40, paid November 23, 1933.

o

The evidence discloses a letter, dated November 18, 1933, written by the general attorney for the plaintiff company, in response to the bank's letter of August 29, 1933, setting forth the contentions of the plaintiff company in denying that the bank had a right of set-off, and giving some of the reasons therefor. The defendant bank responded to this letter November 23, 1933, claiming the right of set-off against the deposit account for the cash surrender value of the two policies. Subsequently, by arrangement between plaintiff and defendant, an account was opened in the name of plaintiff company, consolidating the two accounts previously on deposit in the name of the Missouri State Life Insurance Company, and the plaintiff company was credited with said amount, less the amount noted by the bank as a set-off, which is in controversy, separate from the new deposit credited to the plaintiff.

The plaintiff company became the purchaser of the assets of the Missouri State Life Insurance Company on September 7, 1933. The George L. Harding policy did not lapse for nonpayment of premium until April 23, 1935, and the William H. Harding policy did not lapse until October 21, 1934. At the time of its lapse, the George L. Harding policy was subject to a policy loan of $297.02, and at the time of the lapse of the William H. Harding policy, it was subject to a policy loan of $377.51. At the time of the lapsing of both policies they were placed on extended insurance by the company, as provided in the policies, which fact was unknown to the officers of defendant bank until after the commencement of this action.

In 37 C. J. 435, it is said: "Under the general rule the assignee stands in the place of the assignor, acquires no other or greater rights than the assignor possessed, and takes the policy subject to all the stipulations and conditions in the contract of insurance, and subject to all defenses available at the time of the assignment. If the assignment is of merely a contingent or part interest, when the assignor's interest ceases, the assignment is no longer operative." So, in recognition of this general rule, we can

safely say that the bank stood in the same position as the policyholders.

The plaintiff company, by its arrangement in the purchase agreement, sent out certificates of assumption to the last-known addresses of George L. Harding and William H. Harding. The defendant bank did not receive a certificate of assumption and knew nothing of the certificates mailed to the Hardings until after this suit was started. The officers of the defendant bank did not know that its clerks had paid the premiums on the insurance policies until after this action was commenced. The claim of the appellant in this behalf is found in the principle of law announced in *State v. Brown County Bank,* 112 Neb. 642, 200 N. W. 866, wherein this court held: "The employment by a bank of clerks to perform purely ministerial duties does not constitute them such agents of the bank that notice of transactions passing through the bank in the ordinary routine of the bookkeeping of the institution is notice of the transactions to the bank, in the absence of any showing that these clerks imparted the knowledge they acquired to any officer of the bank, or that it was their duty so to do." The above case was cited for the principle of law announced, and we believe that it will be conceded that the facts are not in any way analogous to those in the case at bar.

The bank contends that in no instance has it receded from its original view on the question of the right of set-off; that in no instance was the plaintiff led to believe otherwise, and specifically calls attention to a part of a letter of October 18, 1934, written by the general attorney for the plaintiff company, which part is as follows: "We are not interested in a receipt; we just want our money."

The bank at all times retained possession of the policies, and the premiums on the policies were paid by the bank subsequent to the insolvency of the Missouri State Life Insurance Company and the purchase of the assets of that company by the plaintiff. Upon the lapsing of the policies, they were placed on extended insurance, fixing a potential obligation on the part of the company as follows: The

George L. Harding policy is on extended insurance in the amount of $2,000, to expire on February 22, 1963; the William H. Harding policy is on extended insurance in the face amount of $4,000, to expire April 20, 1943. The plaintiff company was obliged to assume, under the terms of the two policies, this obligation. At the time the policies lapsed, there was no demand made for the cash surrender value, in conformity with the terms of the contract as stated in the two policies. Under the terms and provisions of each of the policies the cash surrender value could not be claimed while the policies were in good standing; that is, before there had been a default or failure to pay a premium.

In the case of *Blume v. Pittsburg Life & Trust Co.*, 263 Ill. 160, 104 N. E. 1031, in the opinion we find this language: "The parties being competent to contract, had a legal right to insert such provisions in the agreement as they saw proper, and it is the duty of courts to construe and enforce agreements as made and not to make new contracts for parties." There are many cases which hold directly on this point. Therefore, the bank, standing in the same position as the original policyholders who made the assignments of policies to the bank, took the contract of insurance as it found it and, in order to obtain the cash surrender value, as stated in the contract, must conform to the conditions required by the company in this behalf. The terms of the policy stating the manner in which cash surrender values could be obtained are plain and comprehensive.

Appellee cites the second paragraph of the syllabus in *Blume v. Pittsburg Life & Trust Co., supra,* as follows: "Where a life insurance policy provides that after full premiums have been paid for a certain number of years the policy can be surrendered within six months from the date of lapse for paid-up insurance or for cash, as specified in accompanying tables, and further provides that except as to such provisions the policy shall become void if the premium is not paid when due, the surrender of the policy within six months after the date of lapse is a condition

precedent to the right to paid-up insurance or cash, and if no surrender is so made such rights are forever gone." In the body of the opinion at page 164 we find this language: "Our conclusion is that the right to paid-up insurance or surrender value was conditioned upon the surrender of the old policy within six months from the time it lapsed for the nonpayment of the premium, and that a failure on the part of the insured to make an election within the time caused the forfeiture, which was conditional in the first instance, to become absolute after the expiration of six months. This view is supported by the decided weight of authority outside of this state."

Appellee cites *McLaughlin v. Equitable Life Assurance Society,* 38 Neb. 725, 57 N. W. 557, wherein this court held: "It was stipulated in a life insurance policy that in case of default of payment of the annual premium therein named, after the payment in full of three of such premiums, the insurance company would issue in favor of the beneficiary therein, a paid-up policy for as many parts of the amount insured as equaled the number of premiums paid, provided such policy should be surrendered duly receipted within six months from the date of such default. *Held,* That the surrender of the receipted policy within six months after default is a condition precedent to the right to demand paid-up insurance."

While the above case is not analogous to the case at bar relative to the cash surrender value of an insurance policy, yet it will be observed from the above holding that the policy constitutes the entire contract between the parties, and the terms of the policy must be met by the insured to obtain the benefits, as stated therein.

In *Universal Life Ins. Co. v. Devore,* 88 Va. 778, 14 S. E. 532, it was held: "Where a policy provides that when at least three full annual premiums are paid and the policy duly receipted and transmitted to and received by the company before default in payment of any premium due thereon, or within thirty days thereafter, the same may be exchanged for a paid-up term policy for the same amount;

and within thirty days after default, attorneys wrote that the policy had been left with them to procure a term policy, and demanded such term policy, saying that on receipt thereof they would send the original policy duly receipted: Held: The plaintiff has no right to a term policy or to payment of any amount from the insurance company upon their contract, not having complied with its conditions." See, also, *Smith v. National Life Ins. Co.*, 103 Pa. St. 177; *Equitable Life Assurance Society v. Evans*, 25 Tex. Civ. App. 563, 64 S. W. 74; *Meyer v. Manhattan Life Ins. Co.*, 144 Ind. 439, 43 N. E. 448. It is not necessary to discuss other cases of like holding.

Appellant's objection to the cases above cited, and cases cited therein supporting this rule, is to the effect that the cases are ones where it was attempted to surrender the policy after the final expiration date for such surrender; that after an insured defaults in the payment of premium the company has a right to put the policy on extended insurance, without a surrender value, and if the insured does not act within a specified time, this right is forever lost.

We are cognizant of the differences between the plaintiff company and defendant bank, as set forth in the correspondence between the two. We are convinced, however, that the policies were kept in full force and effect by the payment of premiums by the bank. To obtain the cash surrender value of the policies, as stated by the terms thereof, it was the duty of the bank to meet the requirements contained in the policies. This it failed to do, and having so failed, it is not in a position at this time to offset the deposit now held by the bank in the name of the plaintiff against the cash surrender value of the two policies in question.

Other propositions of law are urged, but in view of our holding they are not necessary for a determination of this case and are therefore omitted.

AFFIRMED.