Meyer, Administrator, *v.* The Manhattan Life Insurance Co.

Filed April 1, 1896.

---

No. 17642.

MEYER, ADMR., *v.* THE MANHATTAN LIFE INSURANCE COMPANY.

144 439
157 462

HARMLESS ERROR.—*Striking Out Interrogatory Filed with Pleading.*—Striking out an interrogatory is harmless, if error, where it was not required to enable the party to adapt his pleadings to the facts of the case, and all the information that could have been obtained thereby is fully supplied by the evidence adduced upon the trial.

INTERROGATORIES.—*Filed with Pleading.—When Properly Stricken Out.*—Interrogatories in respect to some matter of opinion, the legal effect of some written instrument, or asking for a conclusion of law or an opinion of hypothetical questions, or requiring the giving of copies of documents, are properly stricken out.

INSURANCE.—*Life.—Surrender of Policy Without Demanding Paid-up Policy.—Forfeiture.*—No recovery can be had on an insurance policy providing for the issuance of a paid-up policy after payment of three or more premiums, if the insured surrenders his

policy before its expiration by nonpayment of a premium, where the insured allowed his policy to lapse by nonpayment of a premium without demanding a paid-up policy.

VERDICT.—*Court Directing Verdict.*—*Failure of Evidence.*—*Trial.*— A verdict is properly directed for defendant where the evidence introduced utterly fails to establish the cause of action stated in the complaint.

From the Marion Superior Court.

*Finch & Finch*, for appellant.

*Miller, Winter & Elam*, for appellee.

HOWARD, J.—This was an action against appellee, brought by the appellant, administrator, upon two separate policies of life insurance, issued by appellee to George F. Meyer, in the sums of $5,000.00 and $10,000.00, respectively.

The complaint alleges the issuance of the policies to George F. Meyer; that the same were not to become binding upon the company until countersigned by the agent of the company in Indianapolis; that he did countersign them and deliver them to the assured; that the assured paid the premiums upon said policies during the years 1864, 1865, 1866, 1867 and 1868; and that before the premiums for the year 1869 became due and payable, the appellee gave George F. Meyer notice that it would not receive said premiums except upon the condition, to-wit: that said Meyer would pay to appellee interest at the rate of 7 per cent., discounted in advance upon his then outstanding notes given for the premiums; that George F. Meyer had made no contract with appellee to pay such interest as a condition of the receipt of said premiums and succeeding premiums, and said requirement and demand were wrongful, unlawful and oppressive, and said Meyer was not compelled to comply therewith, and did not comply therewith, and thereupon said appel-

lee marked said policies upon its books as cancelled and void.

It is further alleged that said Meyer was ready, willing, and able to pay said premiums that were due in 1869, and the succeeding premiums on said policies, and would have paid all of said premiums but for said wrongful and unlawful demand; and that his refusal to comply with said wrongful demand did not affect his rights or the rights of appellant under said policies; and said policies remained in full force; and then alleges the compliance with all the conditions of said policies by said Meyer and plaintiff; the death of Meyer and proof of death, and denial of liability by the appellee.

The insurance was on the ten-year annual payment plan, under which the holder of the policies was entitled to participation in the profits of the company. The policy for $5,000.00, numbered 12,911, was issued on the 22d of September, 1864; and that for $10,000.00, numbered 14,725, on the 3d day of June, 1865. Both were for the sole use of the assured. It was a condition of each policy that after the receipt by appellee of not less than three annual payments of premiums, and on the surrender of the policy on or before it should expire by nonpayment of the fourth or any subsequent annual premium, the appellee would issue a policy not subject to any further charge for annual premiums, payable at the death of the assured.

The first paragraph of the complaint counts upon the policy for $5,000.00, and the third paragraph, upon the policy for $10,000.00, the averments upon each of said paragraphs, except the amounts, being the same. The second paragraph of complaint is upon the provision of the policy for $5,000.00 for paid-up insurance, such provision being that the insured should be entitled to as many tenths of the principal sum insured

as there shall have been annual premiums paid on said policy; and alleges that five premiums were paid, and, therefore, the appellant is entitled to five-tenths of the sum insured. The fourth paragraph counts upon the provision in the policy for $10,000.00 for paid-up insurance, and alleges that four premiums were paid, and, therefore, the appellant is entitled to four-tenths of the sum insured.

There was an answer in general denial, also special answers. In the special answers it was averred that at the request of the assured the contracts in the policy requiring premiums to be paid in cash were modified by an agreement that the company should accept notes for one-half of the annual premiums, with a further agreement in consideration thereof that these notes should be New York contracts and consequently bear interest at the rate of 7 per cent., payable annually in advance; that during all the years that premiums were paid, and adjusted by the insured by giving such notes, the interest was paid thereon at the rate of 7 per cent. in advance, according to the contract and without objection; that the appellee was a mutual company and its charter a part of the contract, which charter required that policies should be forfeited for non-payment of premiums, and when so forfeited the insured should forfeit all claims for previous payments made by him; that in the year 1869 the statement of the premium due in that year was rendered precisely as it had been in former years and the insured made no objection whatever, but simply did not pay or offer to pay the premium or any part thereof, and did not offer to pay any of the notes he had executed or any interest thereon, but allowed the whole premium to remain unpaid without explanation, protest or tender of any kind; that no demand whatever was ever made for a paid-up policy,

nor was there any offer to surrender the old policies before they were forfeited, which was required in order that the insured might become entitled to paid-up policies; that the company was at all times ready to issue paid-up policies upon demand and surrender of the old policies before forfeiture; that on account of the failure to pay premiums in any way, the policies sued on by insured became wholly forfeited by their terms, and that the insured never became entitled to any paid-up policies, nor was the company liable in any way upon the original policies after such forfeiture.

For reply to this answer the appellant alleged that the notes given for premiums were printed in New York, and had the name "New York" printed upon them; but in fact they were signed in Indiana and were delivered to appellee by said Meyer in Indiana; and that said Meyer made no agreement that said note should bear any rate of interest in excess of 6 per cent., which was the lawful rate of interest in Indiana; that the premiums on the policies were payable, as they matured, to the appellee in the city of Indianapolis, Indiana, and that the premiums on said policies that were paid to appellee were paid in Indianapolis, Indiana; that there was nothing in the contract between the said Meyer and appellee to warrant the appellee in demanding interest on said notes at the rate of 7 per cent., and that the appellee wrongfully made such requirement and demand of said Meyer, and notified him that no premium would then (1869) or thereafter be received on said policies unless interest at the rate of 7 per cent. on said notes was paid with said premiums, and plaintiff says that the defendant did not at any time withdraw said notice and demand, and the defendant could not then or thereafter, while said demand, requirement and

notice were adhered to, cancel said policies, and the same continued in full force and effect.

Certain interrogatories were filed for the company to answer. A number of these were stricken out on appellee's motion and others answered. Trial by jury. Evidence heard, and at its close an instruction to find for the appellee. Motion for a new trial overruled. Judgment for appellee, and appeal to the general term. Case affirmed in general term, and appeal to this court.

Here the error assigned is the affirmance of the judgment by the general term.

In the general term the errors assigned were:

First. Overruling appellant's motion to strike out parts of appellee's answer.

Second. Overruling appellant's demurrer to appellee's answer.

Third. Overruling appellant's motion for a new trial, which motion assigned as reasons:

(i.) The ruling of the court in striking out interrogatories and parts of interrogatories.

(ii.) Error in instructing the jury for the appellee.

(iii.) Error in refusing to give to the jury instructions asked by the appellant.

(iv.) That the verdict of the jury was contrary to the evidence and to the law and not sustained by the evidence.

Fourth. Error of the court in instructing the jury to return a verdict for the appellee.

Of these questions involved in the ruling at general term, those discussed here are:

First, the ruling on the motion to strike out interrogatories;

Second, the instruction to return a verdict for appellee.

Of the ruling of the court in striking out interroga-

tories and parts of interrogatories, counsel for appellee say:

"It would be quite unprofitable to discuss this ruling with respect to each interrogatory. We believe it will be apparent upon reading the several interrogatories stricken out and those parts stricken from certain others, that there was no error in the ruling made with respect to any of them. In most cases, inquiry was made with respect to some matter of opinion, the legal effect of some written instrument, or a conclusion of law was asked with respect to certain facts. In a few instances the appellee was called upon to give opinions upon certain hypothetical questions or to give copies of documents more or less voluminous. It needs no argument to show that rulings striking out such interrogatories were properly made. A party interrogated under the practice prevailing in Indiana can not be required to state conclusions of law, answer hypothetical questions, determine the law upon facts stated or set forth copies of instruments. The law provides ample means of obtaining copies of documents which may be used in a law suit, but they cannot be obtained by interrogatories.

"We believe, however, that counsel and court may well be spared any detailed examination of these rulings with respect to each interrogatory, for the reason that there is no suggestion in the record or in appellant's brief that he was in any way injured by them. Interrogatories filed with pleadings are permitted to enable a party to better prepare his case for trial or adapt his pleadings to the facts of the case. There is no suggestion anywhere in this record or in appellant's brief that he lacked any information upon any subject, and by reason thereof was prejudiced or put to the slightest inconvenience in preparing his case

for trial. Upon the trial itself, appellant called and examined Jacob L. Halsey, first vice president of the appellee, and examined him fully as to every subject covered by the interrogatories, excepting only such matters as depended upon written instruments. This examination constitutes by far the greater part of the oral evidence in the cause. It would appear that no representative of the appellee who might have answered the interrogatories stricken out, if they had remained in the record, could have done so more fully and completely than did Mr. Halsey upon the witness stand. The testimony of this witness was supplemented, as fully appears from the bill of exceptions, by all the competent documentary evidence which could have been furnished under any interrogatories stricken out."

. It is enough, perhaps, for us to say that the foregoing contentions by counsel for appellee are fully sustained by the record. We do not think, in the first place, and for the reasons stated by counsel, that the court committed any error in striking out any of the interrogatories or parts of interrogatories, as complained of; and, in the second place, even if there were any error in such ruling, it could be only a harmless error, inasmuch as all information that might thus have been obtained was fully supplied by the evidence found in the record.

At the close of the evidence, the court, on motion of appellee, directed the jury to return a verdict in its favor. The principles applicable to a ruling on a motion to require a jury to return a verdict in favor of the plaintiff or the defendant are the same as those which apply to a ruling upon a demurrer to the evidence. *Oleson* v. *Lakeshore, etc., R. W. Co.*, 143 Ind. 405 (32 L. R. A. 149), and cases cited; *Faris* v. *Hoberg*, 134 Ind. 269; Elliott App. Proced., section 687; El-

liott Gen. Pract., sections 854, 887, 888, 889, and authorities cited; *Parks* v. *Ross*, 11 How. (52 U. S.) 361; *Merrick's Exr.* v. *Giddings*, 115 U. S. 300; and see *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250.

In Work's Pract., section 789, it is said: "The rule is that where there is any evidence, however slight, tending to prove any fact essential to the maintenance of the case, as to that fact the question as to the sufficiency of the evidence to establish it is for the jury, and applying the same rule to the whole case, if there is any evidence, however slight, to sustain a cause of action or defense, the question must be left to the jury; but where there is no evidence to sustain a cause of action or defense the court may, and should, instruct the jury to find against the party having the burden of the issue."

The weight of authority, as Judge Elliott says in his excellent work on General Practice, section 854, *supra*, is that the case should be taken from the jury when the evidence, measured by the rules of law, is insufficient to entitle the party to a recovery, or where it utterly fails to establish the cause of action stated in the complaint. A mere scintilla of evidence in favor of the cause of action, or the defense, will not be sufficient to prevent the case from being taken from the jury, or to prevent the court from directing a verdict.

Judged by the foregoing principles, the court did not err in directing the jury to return a verdict for appellee. The substantial elements of appellant's cause of action were without any support from the evidence.

The policies were ten-year annual payment policies; and it was expressly provided in each policy that "in case the said George F. Meyer shall not pay the said premiums on or before the day hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable for the

payment of the sum assured or on any part thereof; and this policy shall cease and determine." Also, that "in every case where this policy shall cease, or become null and void, all previous payments made thereon shall be forfeited to the said company." And, again, "The premiums are always due on the several days stipulated in the policy; and all risk to the company commences at the time of the actual payment of the first premium, * * * and continues until the day named in the policy for the payment of the next premium, at 12 o'clock, noon, and no longer."

The first policy was issued in 1864 and the second in 1865, each, as already said, on the ten-year payment plan. But it is admitted that payments were made only in the years 1864, 1865, 1866, 1867 and 1868; and that on failure to make payments in 1869 the policies were both forfeited.

As a reason for not making payments in 1869 or afterwards, it is said that, while the policies provide only for the payment of cash premiums, yet the parties made an agreement by which one-half of each year's premium was to be paid by the promissory note of the assured, with interest discounted in advance. These notes, with interest at 7 per cent., were given each year, and the interest paid with the annual premium until the year 1868; after which no notes were given and no interest or premiums paid.

It is alleged in the complaint that before the premiums for the year 1869 became due and payable the appellee gave George F. Meyer notice that it would not receive said premiums except upon the condition that he would pay interest at 7 per cent., discounted in advance, upon his then outstanding notes. It is therefore claimed that, said requirement being wrongful and unlawful, the said Meyer was not compelled to comply therewith, and was thereby excused

from making further payment of premiums; and the *Phoenix Mutual Life Ins. Co.* v. *Hinesley*, 75 Ind. 1, is cited in support of the contention so made. The case, however, as we think, is not in point.

In the Hinesley case the appellant declared the policy forfeited "upon a tender of performance by the appellee of her part of the modified contract." In the case before us the evidence totally fails to show that the appellee company ever gave the assured any such notice as alleged, to-wit, that it would not receive the premiums except upon condition that he would pay interest at 7 or any other rate per cent. upon his outstanding notes. The evidence simply shows that the company sent the renewed receipts for 1869 to its agent at Indianapolis, with itemized statements of premiums, notes and interest due, as had been done each preceding year since the issue of the policies. The sending of such renewed receipts would not of itself have been notice that the company would not receive the premiums due in accordance with the terms of the policies. Besides, there was no evidence to show whether or not the agent ever communicated a knowledge of such renewed receipts for 1869 to the assured. Neither is there any evidence, as in the Hinesley case, that the assured ever tendered performance of his part of the contract of insurance for the year 1869, or for any year thereafter, or that he offered to pay the premiums due that year by the terms of his contracts of insurance, or by any modified terms of such contracts. There was not a particle of evidence given upon the subject.

It is further alleged that Meyer was ready, willing and able to pay said premiums that were due in 1869, and the succeeding premiums, and would have done so but for said wrongful and unlawful demand of ap-

pellee. Not a scintilla of evidence was given to establish this allegation. Whether this alleged demand of the company for unauthorized interest was ever made, or, if made, whether this was the cause of the refusal of the assured to pay his premiums; or whether he was ready and able to pay such premiums; or whether he abandoned his insurance for any other cause, we are not informed by any evidence in the record. The allegations are abundant and sufficient; but the proof is wholly wanting.

In support of the second and fourth paragraphs of the complaint, which count on the recovery, respectively, of five-tenths and four-tenths of the respective policies, counsel say that they are entitled to recover by the terms of the policies themselves. It was a condition of each policy, and this is also alleged in the complaint, that after the receipt by the company of not less than three annual premiums, "and on the surrender of said policy on or before it should expire by the non-payment of the fourth or any subsequent annual premium," the company would issue a paid-up policy for as many tenths of the sum insured as there were premiums paid. It is admitted that the policies were forfeited for non-payment of premiums for the year 1869; and there is no evidence that the assured before the date of such forfeiture made any effort to secure paid-up policies in accordance with the terms of his contract of insurance. The contract of insurance, in the policy itself, stipulated the terms and conditions upon which paid-up policies would be issued. The assured failed to comply with these terms, or to make any demand for such paid-up policies, until, by the terms of his contract, a forfeiture of all his rights thereunder had taken place. Having therefore failed to demand a paid-up policy before the lapse of the original policy, his administrator cannot now recover

anything under the terms of that original contract.

So it was held in *Willcuts* v. *Northwestern Mutual Life Ins. Co.*, 81 Ind. 300, that a member of a life insurance company such as that in the case at bar, is not entitled to a proportionate part of the amount of his policy of insurance, merely because a part of the premium was paid, and particularly in case the conditions of the policy provide that if the premiums are not paid when due the policy shall cease. Such a recovery, like that of the whole face of the policy, must be only in accordance with the terms of the contract. The principle of a recovery upon the *quantum valebat* has no application; for such a contract of insurance is an indivisible one. See also *Sheerer, Guard.*, v. *Manhattan Life Ins. Co.*, 20 Fed. Rep. 886 ; *Lake Shore, etc., R. W. Co.* v. *Richards*, 152 Ills. 59 (30 L. R. A. 33).

There was a total failure of evidence to support the material allegations of the complaint.

Judgment affirmed.

Filed April 2, 1896.