MARION TRUCKING COMPANY, INC., ET AL. *v.* BYERS.

[No. 18,094. Filed April 2, 1951. Rehearing denied June 8, 1951. Transfer denied October 30, 1951.]

*Murray, Mannon, Fairchild & Stewart,* of Indianapolis, for appellant, Marion Trucking Company.

*George P. Ryan; Alan T. Nolan; Irving Fink;* and *Ross, McCord, Ice & Miller* (of counsel), all of Indianapolis, for appellee.

CRUMPACKER, J.—On June 6, 1947, one Don Burkett was in the general employ of the appellant Marion Trucking Company, Inc., and while driving a tractor belonging to his employer, in a southerly direction on Capitol Avenue in the city of Indianapolis, collided with an automobile being driven north on said street by the appellee Ray Byers. Upon suit Byers recovered judgment against both the Marion Trucking Company, Inc., and Burkett and they appeal. Burkett, however, has filed no brief in support of his position nor is he represented by counsel and we assume that he has abandoned his appeal. It will be understood, therefore, that in the use of the word "appellant" hereafter we refer to the Marion Trucking Company, Inc., only.

The sole question presented by this appeal may be stated thus: Was Burkett, at the time and place of

the collision in controversy, acting as the appellant's agent and driving said tractor in and about the appellant's business and within the scope of his employment, thereby charging the appellant with responsibility for his negligence through the doctrine of respondeat superior? The appellant contends that there is no evidence of probative value in the record tending to prove that Burkett was so acting and therefore the verdict of the jury is contrary to law and it was error to deny its motion for a new trial.

The essential facts, pertinent to this question, are undisputed and may be summarized as follows: The appellant Marion Trucking Company, Inc., is a corporation engaged in the transportation of freight, as a common carrier, over the highways of Indiana. For such purpose it owns and operates types of motor vehicles known as tractors which are coupled to so-called trailers, in which freight is loaded, and when so coupled furnish the motor power to haul the loaded trailers over the various routes served by the appellant. In connection with its business the appellant maintains a terminal and loading dock at 14th Street and Northwestern Avenue in Indianapolis which, on June 6, 1947, and for six months prior thereto, was and had been under the management and control of one Richard Evans. During the time involved in this litigation the appellant also employed one Ed Ashmore at this terminal who was known as a night dock man and whose duty it was to help drivers on through runs to unload freight designated for Indianapolis. He had no authority over drivers or equipment but took custody of bills of lading etc. left with him by drivers who completed their runs and went off duty after the terminal office had closed. He was also authorized to report any infraction of the company's rules that he might observe while on duty.

Burkett was employed by Evans as a road driver on June 2, 1947, and had worked but three or four days prior to the collision here involved. His primary duty was to make what the appellant calls its Marion "turn-around." On this run he left the Indianapolis terminal each evening at about 7 o'clock and drove to Marion, Indiana, a distance of about 70 miles, where he dropped off freight, reloaded and returned to Indianapolis, usually arriving there shortly before or after midnight. He was then off duty until the following evening at 7 o'clock for the same run. The appellant also operated a similar turn-around from Indianapolis to Lafayette, Indiana, and return. Drivers were dispatched on this run at about 6 o'clock a.m. and were due back at the Indianapolis terminal around 11 o'clock the same morning. A driver who made both these runs within a period of 24 hours did what is technically known as a "double turn-around." When asked to define a "double-turn-around" Evans said, "it is two distinct turn-arounds not necessarily bearing on one another."

The appellant's business relations with its drivers are governed by a contract with the Teamster's Union under the terms of which said drivers are paid 4½ cents per mile for "driving duty" and $1.60 per hour for "off driving duty." "Driving duty" is time actually spent behind the wheel driving a trucking outfit. "Off driving duty" is time spent by the driver away from his outfit but while he is still responsible for it, such as parking while getting necessary food and rest or while waiting at a dock for his truck to be loaded or unloaded. When he has returned his outfit to the terminal after the completion of a run, checked in, and is not due back at the dock until sometime later to make another run, he is off duty and is not paid during the interval. Taxi cab, bus or trolley car service to and from the appellant's terminal in Indianapolis is

difficult to procure late at night or early in the morning but the appellant made no specific provisions for their drivers in that respect and regarded the difficulty as the driver's problem. The appellant had a standing rule prohibiting the use of tractors by their drivers for personal business or convenience, notice of which was kept posted on the bulletin board in the home office in Marion and in the terminal office in Indianapolis. In addition to such notices Evans orally instructed Burkett to that effect when he employed him. He was also told at that time that upon his return to the Indianapolis terminal each night after completing the Marion turn-around he was to leave his outfit at the dock, deliver his papers to Ashmore and if Ashmore was not there he was to lock them in the tractor and put the keys in the "slot." Where and what the "slot" was does not appear. Under Evans' orders Burkett had made the Marion-Lafayette "double turn-around" on the night of June 4 and the morning of June 5, 1947. Between the runs he had used the tractor to go home and return with the knowledge and without the protest of Ashmore, the night dock man.

On the evening of June 5, 1947, at about 7:10 Burkett left Indianapolis with a tractor-trailer outfit loaded with freight for Marion. Before he left Evans told him that he wanted him to make the Lafayette turn-around the next morning. Burkett asked if he was to leave for Lafayette immediately upon his return from Marion. Evans told him not to do so because it would serve no purpose to get to Lafayette before 8 or 8:30 in the morning as the docks there would not be open, and that he had better go home and get some sleep between the two trips. Burkett got back from Marion that night shortly after midnight. He "spotted" his trailer at the terminal dock, handed his papers to Ashmore, told him he was going

home to get some rest, uncoupled the tractor and drove to the home of his fiancee at 40th and Graceland Streets in Indianapolis where he spent the night. He got up about 5 o'clock in the morning and started back to the terminal preparatory to making the Lafayette trip and enroute was involved in the collision with the appellee which is the subject of this litigation. At no time had Burkett been given express permission to use or drive a tractor as a means of transportation to and from his home between scheduled trips nor did Evans or any other officer of the appellant company have actual knowledge that he was so using it on this occasion or had so used it on a previous occasion.

The legal principles governing this case are clear, well established and require little discussion. If the appellant is to be held liable in damages for the negligent conduct of Burkett, there must be some legal evidence or reasonable inference that at the time of the collision Burkett was engaged in or about the appellant's business and was acting within the scope of his employment. *Sears* v. *Moran* (1945), 223 Ind. 179, 59 N. E. 2d 566; *Meyers, Administrator* v. *The Manhattan Life Insurance Co.* (1896), 144 Ind. 439, 43 N. E. 448; *Frick* v. *Bickel* (1944), 115 Ind. App. 114, 54 N. E. 2d 436.

When the relationship of employer and employee exists between the driver of a truck causing an injury and the owner thereof, the question whether the driver, at the time of the accident, was acting within the scope of his employment involves an inquiry into the contract of employment and the relation his acts at the time of the accident bears to the service he was employed to perform. *Steffen* v. *McNaughton* (1910), 142 Wis. 49, 124 N. W. 1016. See also Anno. 26 L. R. A. (N. S.) 382. The terms of Burkett's contract required him to make the Marion

turn-around each evening and, upon his return, leave his papers and equipment at the Indianapolis terminal. In addition to the Marion turn-around he was to make other trips designated as "extras" when ordered to do so. His duties were classified as "driving duty" and "off driving duty," which we have heretofore defined, and after he had completed one trip and before he was to report for the next one he was off duty and his time was his own.

According to the terms of this contract it would seem that the accident in question occurred during a time when Burkett was off duty and had no specific task to perform in behalf of the appellant and therefore he was not acting within the scope of his employment when he committed the negligent acts of which the appellee complains. The appellee contends, however, that the jury was justified by the evidence in concluding that in this instance the terms of Burkett's general contract of employment were varied to the extent that the interval between his completion of the Marion turn-around and the time he was to report for the Lafayette run, a period of about five hours, was not time off but on the contrary he was continuously on duty and engaged in the appellant's business. This conclusion is justified, the appellee says, because of two facts: (1) Before Burkett left for Marion he was ordered to make the Lafayette turn-around the following morning; and (2) he was ordered to sleep during the interval between the two trips. The appellee contends that the first fact above mentioned justifies the inference that the two trips constituted one specific assignment of work in the performance of which Burkett was on a single tour of duty and that because of the second fact Burkett was not a free agent during the time he would ordinarily be con-

sidered as off duty and any sleep he got was for the appellant's benefit as well as his own.

The undisputed evidence discloses that Burkett got his orders concerning the Lafayette trip before he left for Marion on the night of June 5, because Evans did not expect to be at the Indianapolis terminal when Burkett returned and unless Burkett knew he was to make the Lafayette turnaround in the morning he would not report for work until the following evening. He got back from Marion shortly after midnight and was not scheduled to leave for Lafayette until approximately five hours later during which time, according to his undisputed testimony, he did not expect to be paid and considered himself as off duty. The interval between the two trips was at a time when anyone with no job to do would ordinarily sleep and the fact that the appellant would benefit by reason of such rest period, in that Burkett would thereby be more alert and efficient in his work, is an incident common to all general employment during overnight time-off and affords no basis for the conclusion that he was then engaged in furthering the appellant's business. The unequivocal testimony of Evans and Burkett indicates that both of them regarded the latter as off duty during this interval and neither of them had any intention of varying the terms of Burkett's general contract of employment through Evans' orders concerning the so-called "double turnaround" here involved. Under the circumstances Evans' instruction to Burkett to get some sleep can be considered as nothing more than advisory, to be followed at Burkett's will. In our opinion the inferences and conclusions upon which the appellee relies are strained, forced and unjustified by the evidence, and we are constrained to conclude, as a matter of law, that at the

time of the collision in question Burkett was not engaged about the appellant's business and the appellant cannot be charged with his negligence.

There being insufficient evidence to sustain the verdict of the jury against the appellant the judgment is reversed as to it and the cause remanded with instructions to sustain the appellant's motion for a new trial. The judgment is affirmed as to Burkett.

NOTE.—Reported in 97 N. E. 2d 635.