989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
ESTATE OF Ione Margaret MILLER, By and Through Donald A.
MILLER, Executor of the Estate, Donald A. Miller and Kellie
Heckman, a minor, by and through her next friend, David L.
Heckman, Plaintiffs-Appellants,
v.
BEL-AIR AMUSEMENTS, INCORPORATED, Defendant-Appellee.
 No. 92-1660.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 25, 1993.*
Decided March 18, 1993.
 
 1
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division, No. 88 C 201, S. Hugh Dillin Judge.
 
 ORDER
 
 2
 This is an appeal from the entry of summary judgment in favor of the defendant Bel-Air Amusements, which operated a travelling carnival. Joseph Campbell worked for Bel-Air, and his duties included transporting Bel-Air's equipment from town to town. On August 9, 1987, Joseph was driving equipment to the next town. His wife Mary was some distance behind driving the couple's pick-up truck, which was pulling their travel-trailer. In Indiana, she collided with a car carrying Donald and Ione Miller and Kellie Heckman. The collision resulted in the death of Ione Miller and injuries to the others in the car. The plaintiffs sought to recover from Bel-Air on the theory of respondeat superior. The district court granted Bel-Air's motion for summary judgment.
 
 
 3
 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. We review de novo the district court's decision to grant summary judgment. D.O.E. v. Allied-Signal, Inc., 925 F.2d 1007, 1008 (7th Cir.1991).
 
 
 4
 "Respondeat superior imposes liability ... on an employer for the wrongful acts of his employee which are committed within the scope of employment." Stropes v. Heritage House Childrens Center, 547 N.E.2d 244, 247 (Ind.1989). Thus to prevail against Bel-Air on this theory, the plaintiffs must first prove that the operation of the Campbell's pick-up truck was within the scope of Joseph's employment. Because Mary was the one driving the Campbell's vehicle, the plaintiffs must also prove that Joseph had authority to delegate this task to Mary. See Restatement (Second) of Agency § 5 (1958).
 
 
 5
 Both parties rely, at least in part, on certain lines of cases that we do not believe are helpful to the resolution of this case. Bel-Air cites the general rule in Indiana that commuting to and from work is not considered to be within the scope of employment. Biel, Inc. v. Kirsch, 161 N.E.2d 617, 618 (Ind.1959). The applicability of this rule is questionable because this case does not involve a typical commuting situation. For their part, the plaintiffs rely on Worker's Compensation cases that involve travelling employees. These cases are of limited usefulness because the Worker's Compensation laws are liberally construed so as to provide compensation to injured employees. See Suburban Ready Mix Concrete, (Div. of Terre Haute Concrete) v. Zion, 443 N.E.2d 1241, 1242 (Ind.App.1983). The plaintiffs also cite a number of tort cases from jurisdictions other than Indiana, which provide little guidance in this diversity case governed by Indiana law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).
 
 
 6
 We instead rely on general principles found in the Indiana cases, which unfortunately "are few and not articulate" on the relevant issues. See Konradi v. United States, 919 F.2d 1207, 1210 (7th Cir.1990). Nevertheless, we need not try to reconcile the cases because the plaintiffs focus on one test enunciated by the Indiana Supreme Court:
 
 
 7
 An act may be within the scope of employment although done in part to serve the purposes of the servant. The fact that the predominant motive of the servant is to benefit himself does not necessarily prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service.
 
 
 8
 Great American Tea Co. v. Van Buren, 33 N.E.2d 580, 581-82 (Ind.1941). Thus, the question is whether the movement of the Campbell's vehicle was actuated to any appreciable extent by the purpose of serving Bel-Air's business.
 
 
 9
 The plaintiffs argue that "it is indisputable that the travel was actuated to an 'appreciable extent' to serve the business enterprise that was Bel-Air Amusements." Pl.Br. 9. Yet the plaintiffs do not demonstrate how this is so. They suggest that the benefit can be found in the fact that Joseph's employment with Bel-Air required travelling. However, amongst all the employees of Bel-Air (except for the owners), Joseph was the only employee who had his own travel-trailer. Diane's Dep. 57-58, Peter's Dep. 124.[1] The other employees made other overnight arrangements, such as checking into a motel or sleeping in the cab of one of the trucks. Peter's Dep. 107-08, 121. Bel-Air's owners did not know where the employees spent their nights. Peter's Dep. 119, 124, 126. The owners did not consider it their business. Id. at 137. There is no evidence that Bel-Air required Joseph to have a travel-trailer for any purpose. For example, he was not required to provide for the security of the carnival equipment at night. Diane's Dep. 60; Peter's Dep. 136; R.Doc. 13, Exh.A (Peter's Affidavit). Nor did the Campbells carry any of Bel-Air's equipment in their vehicle. Mary's Dep. 47. As far as the tasks Joseph performed for Bel-Air, it made no difference whether or not he had the travel-trailer. Joseph's duties included helping to drive Bel-Air's equipment from location to location, Joseph's Dep. 35, Peter's Dep. 85, and if Mary was unavailable to drive the travel-trailer, Joseph simply had to make an extra trip, which he did by getting a ride with one of Bel-Air's trucks that was going back for another load. Joseph's Dep. 47.
 
 
 10
 Joseph did derive a benefit from the travel-trailer: it allowed him to have his family with him. Mary's Dep. 47. However, that does not mean that Bel-Air also derived a benefit. Indiana law clearly distinguishes between a benefit to the employee and benefit to the employer. Stropes, 547 N.E.2d at 247; Great American, 33 N.E.2d at 581-82; see, e.g., City of Crawfordsville v. Michael, 479 N.E.2d 102, 104 (Ind.App.1985) (employee on personal business while using employer's vehicle on day off), petition denied, 487 N.E.2d 159 (Ind.1986). We cannot say that any benefit to the employee is also a benefit to the employer, for that would obliterate the distinction recognized by Indiana law.
 
 
 11
 Because we believe that the purpose of serving Bel-Air's business did not actuate to any appreciable extent the driving of the Campbell's vehicle from town to town, we conclude that such activity was not within the scope of Joseph's employment at the time of the accident. Thus, a basic element of liability under the theory of respondeat superior is lacking. See Michael, 479 N.E.2d at 103. We therefore need not consider whether Joseph had authority to delegate to Mary the task of driving the vehicle. The decision of the district court granting summary judgment in favor of Bel-Air is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 "Diane's Dep." refers to the transcript of the deposition of Diane Kotula. We use similar abbreviations for the transcripts of the depositions of Peter Kotula, Joseph Campbell, and Mary Campbell