**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Raymond BARNES, Defendant–Appellant.**

No. 98–1806.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 3, 1999.

Decided Aug. 23, 1999.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Suzanne Philbrick (argued), Chesterton, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

POSNER, Chief Judge.

Barnes pleaded guilty to counterfeiting, 18 U.S.C. § 472, and was sentenced to 21 months in prison. The appeal challenges the sentence on two grounds, both frivolous. We limit discussion to one, not because it is the less frivolous one but because it involves an institutional matter of significance.

The sentencing guidelines require an increase in the defendant's base offense level if, as here, he manufactured the counterfeits, unless they "are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1(b)(2) and Application Note 4 to section 2B5.1. The significance of the quoted provision is that the crime does not require that anyone actually have accepted the counterfeits, *United States v. Bollman*, 141 F.3d 184, 187 (5th Cir.1998) (per curiam); *United States v. Wyjack*, 141 F.3d 181, 184 (5th Cir.1998) (per curiam); *United States v. Miller*, 77 F.3d 71, 76 (4th Cir.1996); if they are obviously counterfeit, they are unlikely to be accepted and so the harm done by the counterfeiter is less, and moreover, the counterfeiter is more likely to be caught and so the punishment need not be so severe in order to maintain the proper level of deterrence. Barnes did not argue the applicability of Application Note 4 in the district court, and so we review it only for plain error. There was no plain error. The uncontested evidence is that Barnes succeeded in passing 9 of his counterfeit bills (all $20 bills), and failed to pass only 2 others, unlike the defendant in *United States v. Miller*, *supra*, 77 F.3d at 76–77, who was successful in only 1 out of 7 attempts. Although Barnes when arrested was carrying 17 of the counterfeits, there is no indication that he had yet tried to pass any of them.

None of the bills is in either the trial or the appellate record; one was offered as an exhibit at the sentencing hearing but was later removed from the courthouse and stored in a Secret Service vault and replaced in the trial record by a black and white photocopy. No one seems to know the present whereabouts of the other 26 bills (the 9 that Barnes passed successfully

and the 17 found on his person when he was arrested). It is less of a puzzle why none of the other bills was not placed in evidence than why the one was. Barnes pleaded guilty, as we noted, so there was no "record" in the usual sense compiled in the guilt phase of the proceedings and no reason therefore for any of the bills to be placed in evidence. And since Barnes's lawyer did not contest the applicability of Application Note 4 at the sentencing hearing, the appearance of the bills was not an issue there either and so there was no more reason to introduce them into evidence then than there had been at the guilt phase.

█ The absence of the bills has become an issue, however. Although Barnes's appellate lawyer was entitled to raise the issue of the "passability" of the counterfeit bills for the first time on appeal, because plain errors in a criminal proceeding can be noticed by the appellate court even if not presented to the trial court, she could not responsibly decide whether to raise this issue on appeal without looking at the counterfeit bills. The evidence in the record that bears on the issue, summarized above, provides no basis for an appeal; the only hope of winning would be to convince us that the nine people who accepted Barnes's $20 counterfeits were illiterate, severely astigmatic, or terminally careless, and the only evidence of that implausible proposition would be the bills themselves. Yet Barnes's lawyer admitted at argument that she had made no effort to procure the bills and in fact had never seen any of them. She could easily have done so, just by asking the government; her failure to do so put her in the position of raising an issue on appeal that she had no reason to think had any conceivable merit. Cf. *United States v. Bollman, supra,* 141 F.3d at 187.

Before argument we asked the government to see the bills and it submitted the one from the Secret Service vault. We have looked at it, and while it would not pass a close inspection, it is not so ridiculously bad a copy that an ordinary person would detect its falseness at a glance. Had Barnes's lawyer inspected it before preparing her brief, she would not have mentioned Application Note 4 in the brief, or made it the focus of her appeal. We do not know whether the missing bills are identical to the one in the vault which we have seen, but she makes no issue of this.

We suspect that the problem is systemic, since the government's appellate lawyer had also never seen the bills and also showed no curiosity about them. Appellate lawyering is an ooververbalized activity. There is, as we have remarked before, little appreciation of the power of images even in cases, such as trademark cases, in which visual impressions have controlling legal significance. *Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 343 (7th Cir.1998). The appellate lawyer's adage might be, a word is worth a thousand pictures. 'Tain't so.

AFFIRMED.