F I L E D
**United States Court of Appeals
Tenth Circuit**

**OCT 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL D. WHITENER,

Defendant-Appellant.

No. 03-3022
(D. Kansas)
(D. Ct. No. 02-CR-10114-MLB)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Mr. Michael D. Whitener pled guilty to Possession of Counterfeit

Obligations or Securities in violation of 18 U.S.C. § 472. He was sentenced, inter

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

alia, to twelve months and one day imprisonment. He objects to an upward adjustment in his base offense level for producing counterfeit bills. United States Sentencing Commission, *Guidelines Manual*, § 2B5.1(b)(2)(A) (Nov. 2002). Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

Mr. Whitener and a coterie of associates printed counterfeit twenty dollar ($20.00) federal reserve notes and a counterfeit one hundred dollar ($100.00) federal reserve note, using Mr. Whitener's printer/scanner. Six of the counterfeit notes were introduced into evidence at the sentencing hearing. Only one had been rejected when tendered to a merchant. The others were accepted. Three of the notes were identified as counterfeit only after deposit into the banking system. A Secret Service agent testified at sentencing that although the notes were of poor counterfeit quality (in part because they lacked even a pretense of security features common to genuine notes), they were typical of eighty-five percent of counterfeit notes passed successfully nationwide. He testified notes of far poorer quality had been successfully passed in other cases.

The base offense level for Mr. Whitener's offense is nine. USSG § 2B5.1(a). The district court adjusted upward because Mr. Whitener "manufactured or produced [a] counterfeit obligation or security of the United States, or possessed or had custody of or control over a counterfeiting device or materials used for counterfeiting . . . ." USSG § 2B5.1(b)(2)(A). That

circumstance requires a two-level upward adjustment, but to a level no less than fifteen. USSG § 2B5.1(b)(3). Finally, the court granted a two-level downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a), resulting in a total offense level of thirteen. With a Criminal History Category I, Mr. Whitener was subject to a guideline range of twelve to eighteen months imprisonment.[1]

Mr. Whitener claims the district court erred in applying the § 2B5.1(b)(2)(A) upward adjustment because the notes he produced were obvious counterfeits. Commentary to § 2B5.1(b)(2)(A) provides it "does not apply to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." USSG § 2B5.1, comment. (n.4). The district court reasoned the exception in the commentary did not apply because, aside from the one note rejected by a merchant, the counterfeit notes "to one degree or another were accepted by the persons to whom they were tendered." (R. Vol. III at 23.) The court also indicated, "I think the logical interpretation of [the exception] is that the bills have to be so bad that they don't get accepted by anybody." (*Id.* at 23-24.)

We review de novo interpretation and application of the guidelines. *United*

_____

[1]Without the upward adjustment, Mr. Whitener claims his total offense level would have been seven, calling for a guideline range of zero to six months imprisonment.

*States v. Tisdale,* 248 F.3d 964, 975 (10th Cir. 2001), *cert. denied,* 534 U.S. 1153 (2002).  However, we "give due deference to the district court's application of the guidelines to the facts."  18 U.S.C. § 3742(e); *United States v. Jones,* 332 F.3d 1294, 1299 (10th Cir. 2003), *cert. denied,* 2003 WL 22172768 (U.S. Oct. 20, 2003) (No. 03-6431).  We accept the district court's findings of fact unless clearly erroneous.  *Id.*  We construe Mr. Whitener's challenge as one going to the district court's interpretation of the guidelines, specifically its interpretation of Application Note 4 included in the Commentary to § 2B5.1.  Therefore, we review de novo.

Mr. Whitener argues the exception in Application Note 4 applies in all instances where a note subjected to minimal scrutiny is discovered to be counterfeit, even if it was successfully passed.  He claims the merchants who accepted five of the notes failed to apply even minimal scrutiny, but when later subjected to minimal scrutiny by knowledgeable persons, the notes were quickly discovered to be counterfeit.  Therefore, he reasons, the exception in Application Note 4 applies.

Quite to the contrary, we think common perception provides a workable and reliable yardstick.  We presume reasonable people, acting with enlightened self-interest, apply minimal scrutiny before accepting any currency.  Minimal scrutiny does not suggest scientific accuracy, studied reflection or the facile judgment of

one familiar with the security features of modern currency. It reflects, instead, the manner of the marketplace where ready acceptance of legal tender moves the machinery of commerce. That practical test was correctly applied by the district court.

When counterfeit notes, even unsophisticated ones, are successfully passed on several occasions, as here, the exception contained in Application Note 4 does not apply. *United States v. Gaither,* 1 F.3d 1040, 1044 (10th Cir. 1993).[2] We agree with the Seventh Circuit's analysis of the exception provided in Application Note 4: "[I]f [notes] are obviously counterfeit, they are unlikely to be accepted and so the harm done by the counterfeiter is less, and moreover, the counterfeiter is more likely to be caught and so the punishment need not be so severe in order to maintain the proper level of deterrence." *United States v. Barnes,* 188 F.3d 893, 894 (7th Cir. 1999).

We detect no error in the district court's interpretation of the guidelines.

---

[2]*Gaither* was decided under the precursor to Application Note 4, which read: "[S]ubsection (b)(2) does not apply to persons who merely photocopy notes or otherwise produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny." USSG § 2B5.1, comment. (n.3) (Nov. 1991).

Accordingly, we **AFFIRM**.

                              **Entered by the Court:**


                              **TERRENCE L. O'BRIEN**
                              United States Circuit Judge