In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-2310

FRANK T. COFFEY,

*Plaintiff-Appellant*,

*v.*

NORTHEAST ILLINOIS REGIONAL COMMUTER
    RAILROAD CORPORATION (METRA),

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 3621—**Charles R. Norgle, Sr.,** *Judge.*

_____

ARGUED FEBRUARY 13, 2007—DECIDED MARCH 9, 2007

_____

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, who worked as an engineer for a commuter railroad, brought suit against his employer, charging negligence under the Federal Employers Liability Act, 45 U.S.C. §§ 51-60, plus a violation of the Locomotive Inspection Act, 49 U.S.C. §§ 20701-20703 (such a violation is negligence per se under the FELA). Early one morning, when it was still pitch dark, the plaintiff had climbed into the driver's cab of the train and (according to his version of the accident, which the procedural posture

of the case—the district court granted summary judgment for the defendant—requires us to credit), while reaching for the light switch, bumped his forehead against the sun visor, which was in a horizontal position rather than, as it should have been, turned up so that it was flush with the wall above the cab's windshield. He alleges improbably that he sustained serious injuries from the bump, even though it didn't prevent him from driving the train to its destination.

The case is remarkable chiefly for the lack of investigation by the plaintiff's lawyer. He never bothered to determine what the visor is made of (his client didn't know, beyond saying that it was "very hard" and was "probably metal"), its weight and dimensions, what its padding was made of and how thick the padding was (the plaintiff testified that it was "real thin"); the distance between the visor's edge and the seated engineer; and whether the light switch was so placed that in groping for it the engineer would be likely to thrust his head forward and hit the visor. The defendant's expert estimated that the plaintiff's head would have been 11.5 inches from the visor when he was where he said he was in the compartment, and the expert speculated that what really had happened was that the plaintiff had tripped over the workbag that he had carried with him into the cab and had fallen against the visor—which was what the plaintiff said had happened when he first reported the accident.

His lawyer conjectured that the bolts that fasten the visor to the wall had been loosened as a result of the train's vibration and the loosening had caused the visor to descend halfway so that it was pointing at the driver's head. The conjecture is implausible, though not quite so outlandish that it can be rejected as a matter of law. But pretty

outlandish—a lack of friction due to the bolts' being loose should result, once the train's vibration started the visor on its downward journey, in its descending all the way; for it to stay in the horizontal position there would have to be enough friction to support the visor's weight, since if there wasn't the visor wouldn't stop in the middle.

The lawyer made no request to inspect the visor. He did ask a Metra foreman whether there had been "any kind of repair or modification" of the cab after the plaintiff reported the injury. The foreman replied that there hadn't been any repair that he was aware of, the inspection of the visor after the accident having revealed no defects in it. The plaintiff testified that the visor moved "fairly easily." But this does not imply that it was so loose that it would tumble down all by itself—and stop before it was all the way down.

Nor did the lawyer make any effort to find the engineer who had last driven the train from that cab. (The train has cabs at either end from which it can be operated.) Suppose that driver had left the visor in the horizontal position, not realizing or perhaps not caring that it would pose a hazard to the next driver if, as happened, the next driver entered the cab while it was still dark outside. (That is a likelier explanation of its position than the loose-bolts theory.) Then, since the FELA abolishes the "fellow servant" rule of the common law of industrial accidents, 45 U.S.C. § 51; *Lancaster v. Norfolk & Western Ry.*, 773 F.2d 807, 817-18 (7th Cir. 1985), the earlier driver's negligence would be imputed to the railroad.

The lawyer failed to explore still another possible theory of liability. A visor that drops down without being moved because it is too loosely fastened is a menace because it can distract the engineer by suddenly falling and blocking

part of his visual field, as in *Moan v. Aasen*, 31 N.W.2d 265, 265-66 (Minn. 1948), and *Sodemann v. Chicago, Milwaukee, St. Paul & Pacific R.R.*, 244 N.W. 865, 866 (Iowa 1933). Even if the engineer's bumping his head against the jutting visor was so unlikely to happen, or so unlikely if it did to hurt him, that the railroad had no duty to take precautions against such an accident, the fact that the railroad did have, and failed to perform, its duty to prevent the visor from dropping down suddenly and thus distracting the engineer could entitle a bumped engineer to a judgment. The accident would on that assumption have been averted had the railroad complied with its duty of care; and as between the careless railroad and the engineer (who would not be barred from recovery even if contributorily negligent, 45 U.S.C. § 53), it might well seem that the loss from the accident should fall on the railroad. The common law rule is that even a negligent injurer is liable only for injuries that he should have anticipated and guarded against, and not for injuries that would have been serendipitously prevented had he satisfied his duty of care, as in our recent case of *Shadday v. Omni Hotels Management Corp.*, No. 06-2022, 2007 WL 509679, at *6-7 (7th Cir. Feb. 20, 2007); see also *Carter v. United States*, 333 F.3d 791, 797 (7th Cir. 2003), and cases cited there. But the Supreme Court has rejected the application of this rule to FELA cases. *Kernan v. American Dredging Co.*, 355 U.S. 426, 438-39 (1958).

As framed by the plaintiff's lawyer, however, the issue of negligence in this case comes down to whether the railroad was negligent in failing to protect its engineers from the risk of colliding with a visor that dropped down into the horizontal position as a result of not being fastened tightly enough. Although the FELA is often said

to require only slight evidence of negligence, e.g., *Mendoza v. Southern Pacific Transportation Co.*, 733 F.2d 631, 632-33 (9th Cir. 1984), that is not what the statute says; and as the Supreme Court reminded us just weeks ago: "Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Norfolk Southern Ry. v. Sorrell*, 127 S. Ct. 799, 805 (2007); see also *id*. at 807; *Page v. St. Louis Southwestern Ry.*, 349 F.2d 820, 823 (5th Cir. 1965).

It's true that the FELA makes the railroad liable for "injury or death *resulting in whole or in part* from the negligence" of the railroad or its employees, 45 U.S.C. § 51 (emphasis added), and this has been interpreted to mean that the railroad is liable if "the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought*." Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506 (1957) (emphasis added); see also *Walker v. Northeast Regional Commuter R.R.*, 225 F.3d 895, 897 (7th Cir. 2000). "The fact that there may have been a number of causes of the injury is . . . irrelevant as long as one cause may be attributable to the railroad's negligence." *Heater v. Chesapeake & Ohio Ry.*, 497 F.2d 1243, 1246-47 (7th Cir. 1974). A concurring opinion in the *Sorrell* case suggests that Congress's only purpose in specifying "in whole or in part" was to make clear that a railroad would be liable if it was negligent even if the injured worker had been much more negligent. *Norfolk Southern Ry. v. Sorrell*, *supra*, 127 S. Ct. at 810-11. A similar case, however, would be that of joint tortfeasors of unequal responsibility, as when one railroad creates a hazard that the second, the defendant, fails through negligence to detect, cf. *Webb v. Illinois Central R.R.*, 352 U.S. 512 (1967); and even if the hazard had

been innocently created, still the negligent failure to detect it would make the defendant liable.

We needn't plumb the mysteries of causation in FELA cases more deeply. The essential point is simply that causation and failure to exercise due care are separate inquiries, and the relaxation of common law standards of proof applies to the first rather than to the second. Still, it is possible to tell a story in which the horizontal position of the visor in this case was a result of the railroad's negligence in failing to tighten the bolts. And then it wouldn't matter if as is likely the plaintiff tripped over his own workbag and fell against the visor; it wouldn't matter even though in that event his own clumsiness or inattention might be thought the principal cause of his injury, especially since if the visor had been in its upright position he might have hit his head against the windshield instead, with equally grave or even graver consequences.

Because the engineer often enters the cab when it is too dark to see the interior, and the light switch is inside the cab, there is a danger that before he can find or turn on the light he'll collide with any object that protrudes into the cab's interior. The visor could be such an object if because its bolts were loose the natural vibration of the train had caused it to descend to the horizontal position. Maybe it could even be argued that since that position has no possible utility—a visor horizontal to the window will be above it and not block any light—the position itself is evidence of negligence, whether the visor came to be in that position because of the carelessness of the previous driver or the loosening of the bolts by vibration. The train had been driven from its other end between the time when the previous driver left the cab and the time when the plaintiff entered it, so the visor might have slid down

between the departure of the previous driver and the arrival of the plaintiff.

The missing links in the plaintiff's negligence case are evidence of the proximity of the visor in its horizontal position to the driver's head when he is groping for the light switch, and the weight and padding of the visor. If the visor is light and well padded, like the sun visor of an automobile, the railroad would have no reason to anticipate that bumping one's head on it would cause an injury and that therefore precautions should be taken to make sure the visor is never in the horizontal position. Perfunctory investigation by the plaintiff's lawyer would have filled in these missing links, but none was ever conducted. The record contains no plan of the cab, and though there are photos they don't reveal the layout. Nor are the essential dimensions of the cab and the visor in the record. The plaintiff, in short, has failed to make a prima facie case of negligence.

But we must consider the bearing of the Locomotive Inspection Act (formerly the Boiler Inspection Act). The Act requires that the driver's cab be free of conditions that endanger the crew. 49 U.S.C. § 20701(1); *Lilly v. Grand Trunk Western R.R.*, 317 U.S. 481, 485-87 (1943); *McGinn v. Burlington Northern R.R.*, 102 F.3d 295, 298-99 (7th Cir. 1996); *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir. 1987). And although the Act does not create a right to sue but merely establishes a safety standard, the failure to comply with that standard is negligence per se under the FELA. *Urie v. Thompson*, 337 U.S. 163, 188-89 and n. 30 (1949); *McGinn v. Burlington Northern R.R.*, *supra*, 102 F.3d at 298-99; *Lisek v. Norfolk & Western Ry.*, 30 F.3d 823, 825-26 (7th Cir. 1994). That means that the plaintiff "is required to prove only the statutory violation and thus is relieved of

the burden of proving negligence." *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166 (1969). He still has to prove a causal relation between a violation and the injury for which he is suing, but there he gets the benefit of the "in whole or in part" language of the FELA. *Id.*

As far as concerns this case, the Locomotive Inspection Act merely requires that the cab be safe; and that is no different from what the FELA would require by itself. But the plaintiff cites several regulations under the Locomotive Inspection Act, and a violation of such a regulation would be negligence per se, just like a violation of the Act itself. *Lilly v. Grand Trunk Western R.R.*, *supra*, 317 U.S. at 485-86; *McGinn v. Burlington Northern R.R.*, *supra*, 102 F.3d at 299; see also *Herold v. Burlington Northern, Inc.*, 761 F.2d 1241, 1246 (8th Cir. 1985). One of the regulations merely repeats what the statute says—that the cab must be safe, 49 C.F.R. § 229.45. Another, more promisingly, requires that sharp edges inside the cab be eliminated or padded, 49 C.F.R. § 238.233(e), but this regulation didn't go into effect until long after the cab car was placed in service, and it is inapplicable, "Section 238.233 Interior Fittings and Surfaces," 64 Fed. Reg. 25540, 25614 (May 12, 1999)—and anyway the visor *was* padded.

A third regulation requires the cab to "have a conveniently located light that can be readily turned on and off by the persons operating the locomotive and that provides sufficient illumination for them to read train orders and timetables." 49 C.F.R. § 229.127(a). It is unclear whether this is a reference to the kind of light that the plaintiff was groping for. The regulation refers to other lights as well, but they are "cab lights which will provide sufficient illumination for the control instruments, meters, and gauges to enable the engine crew to make accurate read-

ings from their normal positions in the cab. These lights shall be located, constructed, and maintained so that light shines only on those parts requiring illumination and does not interfere with the crew's vision of the track and signals." *Id*. So the regulation may not refer to "his" light at all. Still, under the Locomotive Inspection Act itself, without regard to the regulation, if the light switch was in an "inconvenient" place and hence "can[not] be readily turned on and off" and as a result would contribute to the injury if its placement created a risk to the engineer of bumping his head on the visor while reaching for the switch, the plaintiff might have a case. But he hasn't shown this. So he loses.

The case illustrates the curious and deplorable aversion of many lawyers to visual evidence and exact measurements (feet, inches, pounds, etc.) even when vastly more informative than a verbal description. We have noted this aversion in previous cases, *United States v. Boyd*, No. 06-2431, 2007 WL 219940, at *3 (7th Cir. Jan. 30, 2007); *Miller v. Illinois Central R.R.*, 474 F.3d 951, 954 (7th Cir. 2007); *United States v. Barnes*, 188 F.3d 893, 895 (7th Cir. 1999)—once remarking that some lawyers think a word is worth a thousand pictures. *Id.* A wide-angle photo of the cab (showing its layout)—or better, because an angle wide enough to take in the whole cab would create distortion, a schematic diagram or blueprint with the dimensions indicated—would have revealed at a glance whether the visor in a horizontal position, in juxtaposition with the location of the light switch, created a significant risk of the engineer's bumping his head. And information on the weight of the visor and the material and thickness of the padding would have revealed whether the potential for injury that was created by its being in a

horizontal position was sufficiently great to require the railroad to take precautions against its ever being in that position.

AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*