In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3999

JOSE ANTONIO AGUIRRE and MARIA L. AGUIRRE,

*Plaintiffs-Appellants,*

*v.*

TURNER CONSTRUCTION COMPANY, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 515—**Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED JUNE 2, 2009—DECIDED SEPTEMBER 30, 2009

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a tort suit brought in federal district court under the diversity jurisdiction by a bricklayer (and his wife, who is claiming loss of consortium). It is governed, so far as the substantive issues are concerned, by Illinois law. The plaintiff was seriously injured when he fell off a scaffold while working on the renovation of Soldier Field, the big Chicago athletic

stadium. His employer was the A.L.L. Masonry company, but his suit is not against his employer—against which he could seek a remedy only under workers' compensation law. It is against four corporations that, leagued in a joint venture called TBMK, were the general contractors for the renovation. A.L.L. Masonry was one of TBMK's subcontractors. For simplicity, we shall pretend that the bricklayer is the only plaintiff and the joint venture the only defendant.

The district court initially granted summary judgment in favor of the defendant on the ground that the defendant owed no duty of care to the plaintiff because he was the employee of a subcontractor, and that in any event the plaintiff could not use the doctrine of res ipsa loquitur to prove the defendant's negligence because the defendant had lacked exclusive control over the scaffold from which the plaintiff fell. This court reversed, ruling that the defendant had assumed a duty of care to the plaintiff and that *exclusive* control is not an element of res ipsa loquitur. 501 F.3d 825 (7th Cir. 2007). The case then went to trial. The jury rendered a verdict for the defendant, and the plaintiff again appeals.

A general contractor ordinarily is not liable to someone injured by the negligence of a subcontractor, *Gomien v. Wear-Ever Aluminum, Inc.*, 276 N.E.2d 336, 338 (Ill. 1971); *Bieruta v. Klein Creek Corp.*, 770 N.E.2d 1175, 1180 (Ill. App. 2002); *Anderson v. Marathon Petroleum Co.*, 801 F.2d 936, 938 (7th Cir. 1986) (Illinois law); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, p. 509 (5th ed. 1984), though he is liable, by virtue of the doctrine of respondeat superior, for injuries caused by the

negligence of his own employees. Because he hires, fires, trains, and supervises them he ought to be able to do something to prevent their being careless, and he will do something if he is liable for their negligence, while they themselves cannot be fully trusted to be careful because as a practical matter they cannot be sued, being in most cases judgment proof. See *Hartmann v. Prudential Ins. Co.*, 9 F.3d 1207, 1210 (7th Cir. 1993); *Konradi v. United States*, 919 F.2d 1207, 1210 (7th Cir. 1990); Alan O. Sykes, "The Boundaries of Vicarious Liability: An Economic Analysis of the Scope of Employment Rule and Related Legal Doctrines," 101 *Harv. L. Rev.* 563, 569-70 (1988); Sykes, "The Economics of Vicarious Liability," 93 *Yale L.J.* 1231, 1244, 1246-47 (1984).

But a general contractor usually is not in a good position to assure that his subcontractors exercise due care, since he does not hire, fire, train, or supervise their employees. He merely contracts for the subcontractors' output, leaving them to determine how and by whom the output shall be produced. *Anderson v. Marathon Petroleum Co., supra,* 801 F.2d at 938-39; Keeton et al., *supra,* § 71, p. 509; Clarence Morris, "The Torts of an Independent Contractor," 29 *Ill. L. Rev.* 339, 341-42 (1934).

But that is in general, and there are exceptions. The one pertinent here, as explained in our previous decision, see 501 F.3d at 829-30, is where the general contractor assumes (or maybe has imposed on him by law) a degree of responsibility for the safety with which the subcontractor does its work. See *Grillo v. Yeager Construction*, 900 N.E.2d 1249, 1266-67 (Ill. App. 2008); *Joyce v. Mastri*, 861

N.E.2d 1102, 1110-11 (Ill. App. 2007); *Restatement (Second) of Torts* § 414 (1977). Some cases discuss this rule under the rubric of "retained control," but that rather begs the question: control of what? Better to say that if the general contractor's contract with the subcontractor, or a law, requires him to take care for the safety of the sub-contractor's work, he has a duty of care enforceable by tort law. A general contractor who fails to fulfill that duty is liable if injury results—not derivatively liable, as under respondeat superior, but liable for its own negligent act or omission. The defendant in this case took measures to monitor the care of its subcontractors for the safety of the workers on the project, and it could and on occasion did require a subcontractor to take additional precautions. The exception for assumption of responsibility is therefore applicable.

The question then becomes whether the defendant breached its duty of care to the plaintiff, a subcontractor's employee. The plaintiff relies for an affirmative answer on the doctrine of res ipsa loquitur ("the thing speaks for itself"), which allows a plaintiff to prevail in a negligence case by showing that even if there is no direct evidence of negligence, the circumstances of the accident indicate that it probably would not have occurred had the defendant not been negligent. *Dyback v. Weber*, 500 N.E.2d 8, 12 (Ill. 1986); *Metz v. Central Illinois Electric & Gas Co.*, 207 N.E.2d 305, 307 (Ill. 1965); *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 211 (7th Cir. 1994) (Illinois law); Keeton et al., *supra*, § 39, p. 243; *Restatement*, *supra*, § 328D.

As so often in tort law, an old case best illuminates the doctrine. In *Byrne v. Boadle*, 2 H. & C. 722, 159 Eng. Rep. 299 (Ex. 1863), a barrel of flour rolled out of the window of a warehouse and fell on a pedestrian, and the jury was allowed to infer that the accident had been due to negligence by the warehouse's owner. The defendant could have negated the inference by proving that a stranger had (without fault on the defendant's part) entered the warehouse and rolled the barrel out of the window in a spirit of malicious mischief, but he failed to prove that.

The parties manage to avoid telling us what the effect of the doctrine is in a lawsuit governed by Illinois law. Does the doctrine merely allow the trier of fact to infer negligence—is it in other words just an illustration of the use of circumstantial evidence to create a prima facie case? Or does it create a presumption of negligence that entitles the plaintiff to judgment unless the defendant presents evidence in rebuttal, or that even shifts the burden of persuasion to the defendant? In Illinois, as in most states, see Keeton et al., *supra*, § 40, pp. 258-59; *Restatement*, *supra*, § 328D, comment b, it is just a type of circumstantial evidence (which raises the question, why treat it as a separate doctrine?). *Dyback v. Weber*, *supra*, 500 N.E.2d at 12; *Metz v. Central Illinois Electric & Gas Co.*, *supra*, 207 N.E.2d at 307; *Beasley v. Pelmore*, 631 N.E.2d 749, 751 (Ill. App. 1994). A contrary intimation in *Neace v. Laimans*, 951 F.2d 139, 141 (7th Cir. 1991), cannot be considered authoritative in light of the Illinois cases.

The black-letter statement of the doctrine is that the thing that caused the plaintiff's injury must at the time of the accident have been under the defendant's control. But as the Prosser treatise points out, Keeton et al., *supra*, § 39, pp. 249-51, this formulation (like so many black-letter statements of rules) should not be taken literally, as it implies that the doctrine could not be invoked in a case in which the brakes on a new car fail and the manufacturer is sued. Or imagine a duty to warn case in which the duty is to warn about a dangerous activity of someone else. (Suppose the dealer who had sold the car knew the brakes were defective.)

Preoccupation with control derailed the district court's first decision and continues to confuse. The scaffold was assembled by the subcontractor, but we know that the general contractor, the defendant, had assumed responsibility, jointly with its subcontractors, for the safety of the work site. And anyway no one was "controlling" the scaffold when the accident occurred. But both the subcontractor, who had assembled it, and the defendant, who had assumed responsibility for the work site, which included the scaffold, might have prevented the accident. We described this is in our first decision as a case of "joint control," 501 F.3d at 832, equivalent to the concept of nonexclusive control in *Lynch v. Precision Machine Shop, Ltd.*, 443 N.E.2d 569, 572-73 (Ill. 1982), which cites approvingly the Prosser treatise's disapproval (which we quoted) of requiring proof of literal control. *Id.* at 572; see also *Decatur & Macon County Hospital Association v. Erie City Iron Works*, 220 N.E.2d 590, 595-96, 598 (Ill. App. 1966).

Consistent with our earlier discussion, a simpler, more perspicuous way to think about this case is in terms of duty rather than control. Did the defendant have a duty, dischargeable by inspection or otherwise, to make sure that its subcontractors' scaffolds didn't collapse unless the negligence of an employee who used (or rather misused) the scaffold after it had been properly assembled and inspected was responsible for the collapse? When the case was tried on remand, the magistrate judge, in instructing the jury, said that to find for the plaintiff the jury would have to find "that the injury was received from a scaffold which was under the defendant's control . . . [and] that in the normal course of events, the injury would not have occurred if the defendant had used ordinary care while the scaffold was under its control." An instruction in terms of duty would have been clearer but is not what the plaintiff sought or seeks; and the magistrate judge cannot be criticized for instructing consistently with our previous opinion. Rather, the plaintiff argues that a further instruction, making clear that the scaffold didn't have to be under the defendant's exclusive control for the doctrine of res ipsa loquitur to be applicable, should have been given, consistent with our previous opinion, and that in any event the verdict was so far against the weight of the evidence that he is entitled to another trial.

A difficulty in understanding the evidence has arisen, however, from the lawyers' regrettable failure to include in the record a diagram or photographs (other than some unreadable copies of photographs) that would have given us judges an intelligible picture of the scene

and circumstances of the accident. A duplicate of the scaffold was exhibited at trial, but no photo or drawing was made of it. We have pointed out that when the appearance of something is material to a case—it could be a copyrighted picture, a trademark, or, as in this case, the scene and instrumentality of an accident—it is better to show us a picture than to try to describe the object or scene just in words. E.g., *Torrez v. TGI Friday's, Inc.*, 509 F.3d 808, 810 (7th Cir. 2007); *Coffey v. Northeast Illinois Regional Commuter R.R. Corp.*, 479 F.3d 472, 478 (7th Cir. 2007); *United States v. Boyd*, 475 F.3d 875, 878 (7th Cir. 2007); *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 343-44 (7th Cir. 1998). The lawyers at argument did their best with words and hand gestures to depict the scene of the accident for us, and we think we get it, but they would have done better to honor the adage that a picture is worth a thousand words.

The plaintiff was laying concrete blocks around the frame of a 13- to 14-foot-high doorway in the stadium. There were two scaffolds, one on each side of the doorway. Both were 10 feet above the concrete floor and two or three feet apart from each other. By laying planks across the scaffolds through the doorway one could walk from one scaffold to the other. And that is what the plaintiff did. But when he reached the other scaffold he tripped and fell off it. He has no clear recollection of the accident, since he fell head first onto the concrete floor beneath the scaffold. The only witness to the accident testified to seeing the plaintiff standing on the scaffold for a moment before it gave way beneath him and then trying to "run up" the falling plank (a plank of

the scaffold, not the planks he had laid across the two scaffolds) to avoid falling. What the witness seems to have meant (his testimony is unclear) is that the plank started to fall from one end of the scaffold, forming momentarily an angle with the scaffold, and that the plaintiff scrambled for a purchase on the plunging plank before it fell all the way to the ground.

It's unclear what caused the plank to give way. Maybe the plaintiff jarred it loose when he laid his two planks over it. Or maybe the planks that formed the floor of the scaffold had not been laid properly on their supporting crossbar and one gave way, and we'll assume that that's what happened; if the plaintiff was responsible for the fall of the plank that he was standing on, he has no possible case.

The scaffold had been assembled by A.L.L. Masonry several hours before the accident. The scaffold had no middle rail, and the plaintiff speculates that had there been one he might have grabbed it when he fell and by doing so broken his fall. There is also some suggestion that a middle rail would have blocked the plaintiff from getting from one scaffold to the other by laying planks.

If we ignore for the moment the absence of a middle rail, it is apparent that the jury's verdict was consistent with and indeed compelled by the evidence and that the error (if that is what it was) in instructing the jury concerning the defendant's control of the scaffold was harmless.

Either the plaintiff caused the accident, or the accident was caused by improper assembling of the scaffold—and

the assembler was the subcontractor, the plaintiff's employer, rather than the defendant, the general contractor. The defendant had assumed a duty to supervise the measures taken by its subcontractors for the protection of their workers, but as in suits against grocery stores complaining of falls caused by debris on the grocery's floor the fulfillment of the duty did not require continuous or repetitive inspections. See *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 667-68 (Ill. App. 2000); *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 679-80 (Ill. App. 1980); *Reid v. Kohl's Department Stores, Inc.*, 545 F.3d 479, 481-82 (7th Cir. 2008) (Illinois law); *Howard v. Wal-Mart Stores, Inc.*, 160 F.3d 358, 359-61 (7th Cir. 1998) (same).

No evidence concerning the standard of care in a "dual control" case, or the particular safety hazards or accident experience in the Soldier Field renovation project, was presented that would have enabled an inference to be drawn that the defendant should have inspected every newly assembled scaffold before it was used for the first time. The defendant's contract with its subcontractors stated: "All scaffolds are to be built under the supervision of a Competent Person. All scaffolds shall be checked daily, and tagged or labeled safe for use and before each use for safety compliance by a competent person." This was a reasonable delegation of responsibility to the subcontractor, and so the general contractor did not breach its duty of care by not checking all the scaffolds when they were first assembled. *Cochran v. George Sollitt Construction Co.*, 832 N.E.2d 355, 365-66 (Ill. App. 2005); *Rangel v. Brookhaven Constructors, Inc.*, 719 N.E.2d 174, 176-78 (Ill. App. 1999); cf.

Occupational Safety and Health Administration, "Multi-Employer Citation Policy," CPL 2-0.124 (Dec. 10, 1999).

The record discloses that the defendant was assiduous in inspecting scaffolds, including those of A.L.L. Masonry, and on several occasions ordered A.L.L. to change the scaffold because: "sometimes fall protection would be missing or . . . cross bracing." In fact the defendant required safer scaffolds than OSHA required. It would be perverse to penalize it for its preoccupation with the safety of scaffolds by making it strictly liable for any misassembly of a particular scaffold by A.L.L. It is not suggested that the defendant was negligent in hiring A.L.L. or should have terminated it because of safety problems involving its scaffolds.

The magistrate judge's failure, of which the plaintiff complains, to give a "joint control" instruction to the jury was thus a harmless error, and for the additional reason that, as has belatedly become apparent, the doctrine of res ipsa loquitur is a red herring in this case. The question is not whether and in what sense the defendant "controlled" the scaffold but whether it failed to make a timely inspection of it. Suppose a food inspector negligently failed to discover contamination in a chicken-processing plant, and as a result people who ate chickens slaughtered at the plant contracted salmonella. Would we say that the inspector had "controlled" the plant? That would be an unnatural usage, which could only confuse a jury. Maybe the plaintiff thinks that if a case rests on circumstantial evidence it *has* to be squeezed into the doctrine of res ipsa loquitur in order

to withstand a motion for summary judgment. That is not true.

The plaintiff's expert wanted to testify that an OSHA policy statement indicated that the defendant was the "controlling employer" of all the workers at the site of the renovation project. The magistrate judge said "fine" but that the defendant would be permitted on cross-examination to cite a decision by the Occupational Safety and Health Review Commission, *Secretary of Labor v. Summit Contractors, Inc.*, 2007 A.M.C. 1756, 2007 WL 2265137 (Apr. 27, 2007), vacated and remanded by *Solis v. Summit Contractors, Inc.*, 558 F.3d 815 (8th Cir. 2009), even though the decision postdated the accident in this case. The decision had rejected the OSHA policy statement on which the expert had planned to rely. The Commission's decision was reversed, but too late to revisit the district judge's ruling that the decision could be used to cross-examine the defendant's expert.

The plaintiff decided not to ask the expert to testify about the matter and now complains about the judge's ruling on the permissible scope of cross-examination. That is the wrong approach, and would have been even if using an expert witness to present or explain a regulation (the plaintiff treats the OSHA policy statement as having the force of a regulation) to a jury were proper. (It is not. "The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Bammerlin v. Navistar Int'l Transportation Corp.*, 30 F.3d 898, 900 (7th Cir. 1994).) When a judge makes a

conditional ruling on evidence, the party objecting to it must satisfy the condition if he wants to preserve the issue for appellate review. *Ohler v. United States*, 529 U.S. 753, 754-59 (2000); *Luce v. United States*, 469 U.S. 38 (1984); *Wilson v. Williams*, 182 F.3d 562, 565-66 (7th Cir. 1999) (en banc); *United States v. Holmquist*, 36 F.3d 154, 163-66 (1st Cir. 1994). The plaintiff should thus have examined his expert concerning the matter. Had he still lost at trial, he could have complained on appeal about the judge's ruling on cross-examination. Had he won, it would have mooted the issue, and had he lost, there would be a basis for determining whether the judge's ruling had made a difference, as there is not now.

Anyway the OSHA policy statement couldn't have helped the plaintiff. It defines a controlling employer as "an employer who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them," but adds that such an employer "is not normally required to inspect for hazards as frequently or to have the same level of knowledge of the applicable standards or of trade expertise as the employer it has hired." Under Illinois law, too, "even where the employer or general contractor retains the right to inspect the work done, orders changes to the specifications and plans, and ensures that safety precautions are observed and the work is done in a safe manner, no liability will be imposed on the employer or general contractor unless the evidence shows the employer or general contractor retained control over the 'incidental

aspects' of the independent contractor's work." *Rangel v. Brookhaven Constructors, Inc.*, *supra*, 719 N.E.2d at 178.

So there is no practical difference between the OSHA standard and the standard of Illinois tort law, but if there were the latter would control as this is not a suit to enforce OSHA regulations, though Illinois courts sometimes do look to such regulations for evidence of what due care should require. *Sobczak v. Flaska*, 706 N.E.2d 990, 999 (Ill. App. 1998); *LePage v. Walsh Construction Co.*, 468 N.E.2d 509, 510-11 (Ill. App. 1984); cf. *Putman v. Village of Bensenville*, 786 N.E.2d 203, 207-08 (Ill. App. 2003); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 52 (1st Cir. 1991). The only effect of putting the OSHA policy statement before the jury would have been to confuse it about the significance of "control" by pasting the label "controlling employer" on the defendant.

We turn last to the issue of the middle railing. Conceivably had there been one the plaintiff might have broken his fall by grabbing it. Even so, this possibility could not support a judgment of liability in tort. For the purpose of a middle rail is not to provide something to grab on to as one is falling off a scaffold; it is to prevent one from falling off the scaffold by slipping between the scaffold's floor and the top railing. Even more obviously, it is not the purpose of a middle rail to prevent a worker from crossing over from one scaffold to another.

To be actionable in a tort suit, an injury resulting from the absence of a safety measure must be one that the measure was intended to prevent, as we noted in *Shadday v. Omni Hotels Management Corp.*, 477 F.3d 511, 517

(7th Cir. 2007), citing such cases as *De Haen v. Rockwood Sprinkler Co.,* 179 N.E. 764, 766 (N.Y. 1932) (Cardozo, C.J.); *Gauger v. Hendle*, 349 F.3d 354, 363 (7th Cir. 2003), overruled on other grounds by *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006); *Carter v. United States*, 333 F.3d 791, 797 (7th Cir. 2003)—and especially (illustrating our earlier point that the old tort cases are often the most illuminating) *Gorris v. Scott*, 9 L.R.-Ex. 125 (1874). Sheep owned by the plaintiff in that case were washed overboard in a storm. The shipowner had failed to install pens in which to hold the animals, as required by statute. Had the pens been installed, the sheep would have been saved. But the statute's purpose was to prevent contagion rather than to save animals from a watery death. So the plaintiff lost. In deciding how much care to take to comply with the statute, the shipowner was unlikely to foresee and therefore consider the remote possibility that the pens would avert a different and highly improbable harm to the animals. This case is the same. A middle railing on a scaffold is designed to make it less likely that an occupant of the scaffold will fall off it; it is not to give him a chance, if he does fall off, to save himself by a wild grab for the railing.

The judgment for the defendant is

AFFIRMED.