Stephen PAYTON, Plaintiff/Appellant,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant/Respondent.

No. ED 97480.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 5, 2013.

Application for Transfer to Supreme Court Denied March 14, 2013.

Application for Transfer Denied Aug. 13, 2013.

Drew C. Baebler, Bauer & Baebler, P.C., St. Louis, MO, for appellant.

Stephen M. Buckley, Ann E. Buckley, Buckley & Buckley, L.L.C., St. Louis, MO, for respondent.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, a railroad employee, filed a lawsuit against his employer, the defendant railroad, to recover damages for (1) personal injuries suffered from his working conditions, in violation of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.;* and (2) for personal injuries caused by the use of locomotives in improper condition, in violation of the Locomotive Inspection Act (LIA), 49 U.S.C. §§ 20701–20703.[1] At the conclusion of plaintiff's case, the trial court entered a directed verdict in defendant's favor on the LIA count. The case was submitted on the FELA count, and the jury returned a verdict in defendant's favor. The trial court thereafter entered judgment in defendant's favor. On appeal from this judgment, plaintiff asserts that the trial court erred (1) in directing a verdict on the LIA count because he adduced substantial evidence that a violation of 49 C.F.R. § 229.119 caused plaintiffs injury; and (2) in allowing evidence that railroad employees with thirty years of service may retire at age sixty, in violation of the collateral source rule. We affirm.

*FACTUAL BACKGROUND*

Plaintiff, Stephen Payton, was an employee of defendant, Union Pacific Railroad Company (Union Pacific), and its predecessor, Chicago and Northwestern Railroad, from 1973 through October 4, 2010. Plaintiff worked as a brakeman and conductor. Plaintiff was sixty-two years of age when he stopped working in 2010.

Plaintiff introduced evidence about two types of "toad stool seats" in the locomotive cabs. One type was rigidly attached to the floor, and had no springs, shocks, or vibration dampening in the pedestals of the seats. The other type of toad stool seats was anchored to the side of the cabs. They had a triangular base on the wall and slid back and forth in the channel, so the position of the seat could be adjusted. Those seats would get loose over time, vibrate, jostle, and wobble.

Plaintiff's physician, Eric M. Peterson, M.D., a family practitioner, testified by deposition that he first saw plaintiff in August 2001 after plaintiffs previous physician retired. He testified to plaintiff's health history. He testified that plaintiff had been diagnosed with degenerative disk disease and a T–12 compression fracture.

Plaintiff's counsel asked Dr. Peterson the following hypothetical question about medical causation:

[COUNSEL]: But I'm going to have you assume that during his career, which spanned 37 years, he walked on railroad ballast, that he had to climb straight up and down on engines and railcars, that he had to turn hand brakes on railcars that were sometimes high, sometimes low, and that sometimes they would bind and catch due to poor maintenance, that during the time when he would ride on cabooses, he would get thrown out of the seat often because of slack action, which is a compression force that suddenly moves him and the caboose forward.

Other times he would be asked to ride on the back of cars holding on to

---

1. Plaintiff voluntarily dismissed a third count at the close of his case.

the moving cars and that he would experience slack action, which would then pull on his arm and neck area at that time, that he would be asked to ride for long periods of time on seats within the locomotives themselves that are just bolted to the floor without any—without any shock absorption devices in the seats themselves and that depending upon how well the roadbed is maintained that he would go back and forth and experience the vibrations from the tracks themselves for eight, ten, twelve hours a day; that he would oftentimes have to get on and off moving equipment; and that he would have to walk, as I said, on ballast for long periods of time.

Now, given those things, do you have an opinion within a reasonable degree of medical certainty whether the—this railroad work that I've described to you contributed to cause the problems in his low back and neck that are the degenerative changes, the wear and tear injuries, that we've described?"

[DR. PETERSON]: I'm sure they contributed to it.

In granting the defendant's motion for directed verdict on Count II, the trial court explained:

In the Alabama Supreme Court case,[2] they talk about the evidence of causation that was produced in this case. It is significantly greater than anything in this case. In this case, the questions that are asked are about the fixed seats, which I assume are the toad stool seats that are being referred to. It is not your questions are actually about the fixed seats and the vibration, because of lack of shock absorption devices, but not about wobble. I know your argument it is that whole environment of vibration. That's sort of what you are suggesting, but that goes to the FELA claim, not necessarily to the locomotive inspection claim. I just, I don't believe that there is evidence of causation that makes a submissible case. I don't think the evidence has sufficiently supported that claim.

## DISCUSSION

### I. Directed Verdict—LIA

■ For his first point, plaintiff asserts that the trial court erred in granting defendant's motion for directed verdict on his LIA count because he presented substantial evidence of a violation of 49 C.F.R. § 229.119 in that the railroad's locomotive seats were not securely mounted and braced and that such defect caused increased vibration and movement inside the cab and resulted in injury to plaintiff.

■ On review of the grant of a directed verdict against a plaintiff, we must determine whether the plaintiff made a submissible case. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011). The question of whether a plaintiff has made a submissible case is a question of law that we review *de novo*. *Id.* " 'A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence.' " *Id.* (quoting *Investors Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007)). In determining whether a plaintiff has made a submissible case, we view the evidence in the light most favorable to that plaintiff. *Id.*

FELA makes the railroad liable for "injury or death resulting in whole or in part from the negligence" of the railroad or its employees, and this has been interpreted to mean that the railroad is liable if "the proofs justify with reason the conclusion

that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

■ In FELA cases, "'[e]xpert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile.'" *Brooks v. Union Pacific R.R.,* 620 F.3d 896, 899 (8th Cir.2010) (quoting *Moody v. Maine Cent. R.R. Co.,* 823 F.2d 693, 695 (1st Cir.1987)). In this case, the degeneration in plaintiff's neck and back was not the type of injury that would have an obvious origin to lay persons. Accordingly, "'expert testimony [was] necessary to establish even that small quantum of causation required by FELA.'" *Id.* (quoting *Claar v. Burlington N.R.R. Co.,* 29 F.3d 499, 504 (9th Cir.1994)). We have found sufficient evidence of causation when a plaintiff's medical expert testifies, to a reasonable degree of medical certainty, that the plaintiff's work activity at issue contributed to his injury. *Rice v. BNSF Ry. Co.,* 346 S.W.3d 360, 369 (Mo.App.2011); *Euton v. Norfolk & Western Ry. Co.,* 936 S.W.2d 146, 151 (Mo.App.1996). However, we have found insufficient evidence to make a submissible case of causation when the medical expert fails to testify that the specific work activity at issue caused the plaintiff's injury. *Ewing v. St. Louis Southwestern Ry. Co.,* 772 S.W.2d 774, 776 (Mo.App.1989).

■ LIA supplements FELA by imposing on interstate railroads an absolute and continuing duty to provide safe equipment. *Urie v. Thompson,* 337 U.S. 163, 188–89, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). LIA does not confer a right of action on an injured plaintiff but rather

allows a plaintiff to treat a proven LIA violation as negligence per se in an action under FELA. *Id.* This means that a plaintiff "is required to prove only the statutory violation and thus is relieved of the burden of proving negligence." *Coffey v. Northeast Ill. Reg'l Commuter R.R. Corp.,* 479 F.3d 472, 477 (7th Cir.2007)(citing *Crane v. Cedar Rapids & Iowa City Railway Co.,* 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969)). Although the plaintiff in a LIA case is relieved of the burden of proving negligence, he "still has to prove a causal relation between a violation and the injury for which he is suing, but there he gets the benefit of the 'in whole or in part' language of the FELA." *Id.* (citing *Crane,* 395 U.S. at 166, 89 S.Ct. 1706). The defect must *cause,* in whole or in part, the plaintiff's injury. *Miller v. Gulf, Mobile & Ohio Railroad Company,* 386 S.W.2d 97, 101 (Mo.1964).

■ In this case, plaintiff provided substantial evidence of a violation of 49 C.F.R. § 229.119(a), which requires: "(a) Cab seats shall be securely mounted and braced." It is not disputed that plaintiff produced substantial evidence that the wall-mounted cab seats became loose over time.

However, plaintiff failed to establish that defendant's violation of 49 C.F.R. § 229.119(a) was a cause, in whole or in part, of plaintiff's degenerative disk disease. Dr. Peterson was plaintiff's sole medical expert. Dr. Peterson's testimony does not identify defendant's violation of 49 C.F.R. § 229.119(a) as a cause, either in whole or in part, of plaintiffs degenerative disk disease. Plaintiff's counsel asked Dr. Peterson his opinion of whether numerous other working conditions, which were part of plaintiff's FELA claim, contributed to his degenerative back and neck changes. However, counsel never asked Dr. Peterson if the violation of 49 C.F.R. § 229.119(a), loose cab seats, caused plain-

tiffs injury, and Dr. Peterson did not otherwise so testify. As a result, plaintiff failed to establish a causative link. *See Ewing,* 772 S.W.2d at 776.

Plaintiff relies on *CSX Transportation, Inc. v. Miller,* 46 So.3d 434, 461 (Ala.2010), an Alabama Supreme Court case involving loose, wall-mounted toad stool seats. The court held that loose toad stool seats violated 49 C.F.R. § 229.119(a). *CSX,* 46 So.3d at 463. It also held that the relevant expert testimony of a medical doctor specializing in occupational medicine was sufficient evidence that the toad stool seats caused the plaintiff's injury. *Id.* at 464. In *CSX,* the medical expert testified that "loose locomotive seats increase movement for the employee, which tends to amplify the shock forces aboard the locomotives," that there is a widely recognized relationship between shock forces and degeneration, and that these conditions caused the plaintiff's degenerative disk disease. *Id.* at 443. In this case, Dr. Peterson did not so testify.

Plaintiff contends that Dr. Peterson's testimony was nonetheless sufficient, claiming that "Dr. Peterson clearly stated that the vibration from the locomotive seats for 8–12 hours per day would have contributed to the degenerative changes in [plaintiff's] neck and low back." Plaintiff misstates Dr. Peterson's testimony. Dr. Peterson agreed that plaintiff's working conditions described in the hypothetical question contributed to cause the degenerative changes in plaintiff's back and neck. However, that hypothetical question did not mention a violation of 49 C.F.R. § 229.119(a) by name or by description. The sole reference to vibration in the question was not in connection with loose or unmaintained seats, but was with respect to "vibrations from the tracks themselves."

Plaintiff was required to prove that the violation caused the injury for which he sought damages. *Coffey,* 479 F.3d at 477.

Because plaintiff sought damages for a violation of 49 C.F.R. § 229.119(a), requiring seats to be "securely mounted or braced," plaintiff was required to show that the failure to ensure that the seats were "securely mounted or braced" was a cause of his injury. Plaintiff's medical expert did not testify that the defendant's violation of LIA, the loose cab seats, was a cause of his spinal degeneration. Accordingly, plaintiff failed to make a submissible case under LIA. The trial court did not err in granting defendant's motion for directed verdict. Point one is denied.

## II. *Admission of Testimony of Railroad Employee Retirement Eligibility*

In his second point, plaintiff contends that the trial court erred in admitting testimony that railroad employees like plaintiff were eligible for retirement at age sixty with thirty years of service because this evidence violated the collateral source rule and was highly prejudicial. Plaintiff failed to preserve this error for review.

Prior to trial, plaintiff made a motion in limine as follows,

> That no mention be made of the fact that the Plaintiff, by reason of his age, infirmity, disability or otherwise is now receiving or can apply for Railroad Retirement Board disability or Railroad Retirement Board Retirement benefits or that he may be eligible for Medicare benefits as all of these benefits are collateral sources which are unrelated to the amounts that this plaintiff is entitled to receive under the Federal Employer's Liability Act.

The trial court granted this motion.

On direct examination of witness Mark Wolber, a conductor employed by defendant, plaintiff's counsel established that Mr. Wolber was sixty-six years old and was still working for defendant. Plaintiff's counsel asked Mr. Wolber, "Is there any requirement at the Union Pacific that a

conductor, like yourself, with the seniority that you have, retire at age 65?" Mr. Wolber said no. Plaintiff's counsel followed up by asking, "And if you want to keep working, can you keep working?" Mr. Wolber responded that he could.

Before beginning Mr. Wolber's cross examination, defendant's counsel referred to Mr. Wolber's testimony and told the court he wanted to establish that Mr. Wolber was eligible to retire at age sixty with thirty years of service. Plaintiff's counsel responded that he did not think his question opened up this issue or that the proposed question was relevant. Plaintiff did not object to the proposed question on the grounds that it would elicit collateral source material. The court ruled that defendant's counsel could ask that question only.

Defendant's counsel proceeded with cross examination and asked Mr. Wolber, "All right. The fact is that you are eligible to retire as a railroad worker if you have 30 years of service at age 60, aren't you?" Mr. Wolber answered, "Yes." Defendant's counsel asked, "You don't have to, but you are eligible to retire at that point, as long as you have 30 years of service, and reach age 60?" Mr. Wolber again answered, "Yes." Plaintiff's counsel did not object to this question or answer on any ground when it was asked.

Later during plaintiff's testimony, plaintiff's counsel asked him when he had planned to retire before his surgery. Plaintiff testified that he had planned to work until age sixty-five. Defendant's counsel then asked plaintiff on cross examination, "And is it correct, as we had an earlier witness testify, that as a railroad employee, if you have 30 years of service, you can retire at age 60?" Plaintiff responded, "That's correct." Plaintiff's counsel did not object to this question.

 This issue is not preserved for review. First, plaintiff's motion in limine only addressed evidence of "benefits," not evidence of retirement age. In any event, a motion in limine is insufficient to preserve an evidentiary question for review. *Thornton v. Gray Automotive Parts Co.,* 62 S.W.3d 575, 588 (Mo.App.2001).

 More importantly, plaintiff did not raise the "collateral source" doctrine during the colloquy about the admission of retirement age, during Mr. Wolber's testimony, or during plaintiff's testimony, and he did not make an objection on that ground. Plaintiff also made no objection based on collateral source when these witnesses were asked about retirement age. "If a party fails to raise an objection concerning an issue at trial, that issue is not preserved for appeal." *Id.* An objection to evidence must be made at trial, and on appeal the party must base its claim of error on the same grounds raised in its trial objection. *Gateway Foam v. Jokerst Paving,* 279 S.W.3d 179, 188–89 (Mo. banc 2009). Under these circumstances this issue is not preserved. *See Thornton,* 62 S.W.3d at 587–88.

 Finally, there is no reason for us to exercise our discretion to review this issue as a matter of plain error. The collateral source rule applies to evidence of collateral compensation for a plaintiffs injury. *Ford v. Gordon,* 990 S.W.2d 83, 85 (Mo.App.1999). Here, neither Mr. Wolber nor plaintiff testified about any collateral compensation. Point two is denied.

*Conclusion*

The judgment of the trial court is affirmed.

MARY K. HOFF, J. and LISA VAN AMBURG, J., concur.